**Gayle Lee JONES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 246–88.**

Court of Criminal Appeals of Texas, En Banc.

May 2, 1990.

Pete Gilfeather, Fort Worth, for appellant.

Jorge A. Solis, Dist. Atty., Sara A. Fauls, Asst. Dist. Atty., Abilene, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

WHITE, Judge.

In *Miffleton v. State*, 777 S.W.2d 76 (Tex.Cr.App.1989), we made it clear that compelling a DWI suspect to perform sobriety tests on videotape did not call for testimonial responses and therefore offended neither the United States nor the Texas

Constitutions. This holding applied only to the visual part of the recording; we failed to reach the admissibility of defendant's statements on the accompanying soundtrack which were made after defendant invoked his *Miranda* right to counsel. In this case, we hold the police questioning incident to the videotaped sobriety test was "activity normally attendant to arrest and custody" of a DWI suspect, not "interrogation." Since there was an absence of police questioning calling for testimonial responses, the appellant's admissions on the audio portion of the DWI videotape were admissible even after a proper invocation of her *Miranda* rights.

Appellant was convicted of driving while intoxicated. On direct appeal to the Eastland Court of Appeals, appellant claimed, *inter alia,* that the trial court erred when it refused to suppress the oral statements she made on her DWI videotape beginning with her request to have counsel present. *Jones v. State,* 703 S.W.2d 391 (Tex.App.—Eastland 1986). The Court of Appeals held that appellant's rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) had been violated.

On State's petition for review, we held that appellant had effectively invoked her *Miranda* right to counsel. We also held that her subsequent actions did not constitute a waiver of that right. *Jones v. State,* 742 S.W.2d 398 (Tex.Cr.App.1987). We then had only to determine whether any of appellant's statements on the videotape were the product of custodial interrogation. *Id.* It was clear that appellant had been in custody, *id.* at 406; all that remained was a determination whether she was under "interrogation" during those portions of the tape played to the jury. Unfortunately, we did not possess the videotape or a transcript of its contents with which to make this determination. We vacated the Court of Appeals' decision and remanded the case for application of the *Rhode Island v. In-*

*nis* standard in order to determine whether police conduct in the instant case constituted "interrogation" as that term has been defined in *Miranda* and its progeny. *Id.* at 407, *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).

On remand, the Court of Appeals applied *Innis* and held that "audio taping [in addition to videotaping[ the suspect's oral responses to questions incidental to the 'field sobriety test' is a practice which ... the 'police should know [is] reasonably likely to elicit an incriminating response' and 'thus amounts to interrogation.'" *Jones v. State,* 745 S.W.2d 94 (Tex.App.—Eastland 1988, pet. granted). The State then petitioned for review of this second holding of the Court of Appeals. As stated above, we hold in this case that the police behavior depicted in appellant's videotape is not "interrogation."[1] We therefore reverse the Court of Appeals' judgment and affirm appellant's conviction.

The facts of this case have already been set forth in our earlier opinion, *Jones,* 742 S.W.2d at 399–401, and need not be repeated here at great length. Suffice it to say that appellant requested an attorney before the taping began and at the beginning of the taping. *Id.* at 401. We held that appellant's requests clearly and unequivocally asserted her Fifth Amendment right to counsel announced in *Miranda* and *Edwards.* *Id.* at 406. We now have only to explore the nature of the police behavior during the videotaping.

The transcript of the audio portion of the videotape reads as follows:

Q. I am Officer Ricky Sanchez, the videotaping officer. The arresting officer is going to be Boyd Scott, which will not being (sic) present in the room. The transporting officers will be Steve Rogers and Julie Komatz. On my left will be the Defendant, last name Jones, Tayle, middle initial L., Lincoln.

A. Spelled L-e, Lee.

---

1. In the Court of Appeals, appellant also made a claim that her oral statements on the videotape were inadmissible under Art. 38.22, V.A.C.C.P. Although that claim is not before us now, we note that this statute, by its own terms, places no restrictions on the admissibility of oral statements which are not the product of custodial interrogation. Art. 38.22, Sec. 5, V.A.C.C.P.

Q. L-e, okay. Date of birth, 12–10–62. At this time, pronounce your full name and your date of birth.

A. Gayle Lee Jones, 12–10–62.

Q. Okay. Okay, Gayle, listen up just a minute. Okay? You are now being photographed and recorded as a standard procedure in the interview of a driving while intoxicated suspect. You have the right to remain silent and not make any statement at all. Any statement you make may be used as evidence against you at your trial. Any statement you make may be used as evidence against you in Court. Do you understand these rights?

A. Yes.

Q. Yes or no?

A. Yes.

Q. Okay. You have the right to have a lawyer present to advise you prior to and during any questioning. If you are unable to employ a lawyer, you have the right to have a lawyer appointed to advise you prior to and during any questioning. You have the right to terminate the interview at any time. Do you understand these rights?

A. Yes, but I think I would like to have a lawyer.

Q. Okay. All right. Gayle, step back here right now where the two is. Now, what I am going to have you do right now is a field sobriety test. Do you know what a field sobriety test is?

A. No.

Q. Okay. I am going to show you how to do a couple of things for me and you watch me first. Okay?

A. Yes.

Q. The first thing I want you to do is stand up straight with your feet together. Okay? Now, I want you to lift one foot up for approximately fifteen to twenty seconds until I tell you to put it down. Okay? Put your foot down.

A. When am I supposed to have a lawyer to do all of this stuff?

Q. As far as answering questions—

A. I can do all of this stuff by myself?

Q. Right. He don't have to be present for this.

A. Okay.

Q. Okay. The next thing I want you to do is turn around and face me. No, face me. Put your feet together, your hands to your side. I want you to close your eyes and tilt your head back for approximately fifteen or twenty seconds until I tell you to open your eyes. Close your eyes.

A. They are closed.

Q. Open your eyes. Step right over there.

A. Right here?

Q. Yes, that is fine. Do you see this line on the floor?

A. Yes.

Q. Okay. What I want you to do, I want you to walk that line, heel to toe, just like this. Okay? Heel to toe.

A. I am in the military service.

Q. Okay.

A. Do I have to do this?

Q. Gayle? Gayle, look at me.

A. Yes, I see that.

Q. Okay.

A. I follow the arrows.

Q. Follow the arrows all the way, heel to toe. Once you get there, pivot, go in to the box number two.

A. If I wanted to do this, I would have gone into the Marine Corps. I should have gone into the Marine Corps. Oh, you all are going to get me big time. This is on tape and talking to myself. Lock me up.

Q. Okay. Gayle, at this time, I need for you to pick this coin up just like this, bend over and just pick it up. Okay?

A. Yes, sir.

Q. Pick it up. Okay. Step back up where the one is. Okay. Gayle, can you read and comprehend the English language?

A. Yes, sir.

Q. Read that out loud for me.

A. Six different flags have flown over Texas during its history. Texas is often called the Lone Star State because its flag has a single star. The State flag

is not the only State symbol. The pecan tree is the State tree and the bluebonnet is the State flower. In 1927, the mockingbird became the State bird. Texas has many symbols in which all Texans can take pride.

Q. Okay. Gayle, at this time, I am going to give you the opportunity to make a phone call to your attorney. If you want to make a phone call, there is a phone and a telephone book if you don't know the number.

The issue in this case has been the subject of conflicting opinions in the Courts of Appeals. In *Mills v. State,* 696 S.W.2d 421 (Tex.App.—Dallas 1985, *vacated and remanded,* 720 S.W.2d 525 (Tex.Cr.App. 1986), and *Knox v. State,* 722 S.W.2d 793 (Tex.App.—Amarillo 1987), the Courts of Appeals held that compelled sobriety testing was custodial interrogation and therefore that statements made during these tests were inadmissible if made after the invocation of *Miranda* rights. We granted review in both cases, but we remanded partly on other grounds in *Mills,* and were unable to review the *Knox* decision when the videotape at issue was accidentally erased before reaching us. *Mills v. State,* 720 S.W.2d 525 (Tex.Cr.App.1986) and *Knox v. State,* 769 S.W.2d 244 (Tex.Cr.App. 1989).[2]

The Court in *Gathright v. State,* 698 S.W.2d 260 (Tex.App.—Ft. Worth, 1985, no pet.) went even further than the other two Courts of Appeals, holding that the entire video interview (sound *and* picture) was inadmissible when the suspect invoked his right to remain silent at the beginning of the sobriety tests.

On the other hand, the Court in *Chadwick v. State,* 766 S.W.2d 819 (Tex.App.— Dallas 1988, pet. granted), held that sobriety test questions, at least where they produced no responses other than those necessary to perform the tests, do not amount to "interrogation" and thus are not covered by the prophylactic safeguards of *Miranda. Id.* at 821. We are most in accord with the *Chadwick* holding.

Not all post-arrest police questioning can be classified as "interrogation." Courts around the nation and in Texas have held that a variety of questions are outside the constitutional definition of "interrogation."[3] The *Innis* definition itself expressly excludes certain police questioning and behavior from its ambit.

"We conclude that the Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police."

---

**2.** We remanded *Mills* for reconsideration in light of *McCambridge, supra,* and *Forte v. State,* 707 S.W.2d 89 (Tex.Cr.App.1986). We dismissed *Knox* as improvidently granted.

**3.** For example, routine inquiries, questions incident to booking, broad general questions such as "what happened" upon arrival at the scene of a crime, and questions mandated by public safety concerns e.g. "where did you hide the weapon" when the weapon has just been hidden in the immediate vicinity. See generally Ringel, SEARCHES AND SEIZURES, ARRESTS AND CONFESSIONS, Sec. 27.4 (Clark Boardman Company, Ltd. 1987). In Texas, we have held that asking a suspect in custody whether he will take a blood alcohol test or repeatedly asking a suspect to give a breath sample are not "interro-

gations." *McCambridge v. State,* 712 S.W.2d 499 (Tex.Cr.App.1986) (remanded on other grounds); see *McCambridge v. State,* 778 S.W.2d 70 (Tex.Cr.App.1989) (affirmed on other grounds) (blood test). Lower courts have also held several other police questions to be non-interrogative. *Massie v. State,* 744 S.W.2d 314 (Tex.App.—Dallas 1988, pet. ref'd.) ("Where are you going?" to a DWI suspect stopped on the street) and *DeLeon v. State,* 758 S.W.2d 621 (Tex.App.—Houston [14th Dist.] 1988, no pet.) (Asking a suspect where the murder weapon was). *But see Sims v. State,* 735 S.W.2d 913 (Tex.App.—Dallas 1987, pet. ref'd.) (holding that questions regarding when a defendant last ate, and asking what day, date and time it was did amount to interrogation).

*Innis*, 446 U.S. at 300–302, 100 S.Ct. at 1689–90, 64 L.Ed.2d at 307–308 (1980). We must now examine whether the police conduct in this case falls within the *Innis* definition of interrogation.

The United States Supreme Court has excluded several police practices from the scope of the self-incrimination privilege because they seek only physical evidence, not testimonial confessions of guilt. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) (compelling suspect to undergo a blood test not prohibited by Fifth Amendment); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973) (voice exemplars may be compelled without offending the Fifth Amendment privilege); *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *United States v. Mara*, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973) (handwriting samples may be taken from an unwilling suspect without running afoul of the self-incrimination privilege); *Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973) (taking fingernail scrapings without a suspect's permission is permitted). We hold that the sobriety test at issue in this case is merely another example of the collection of physical evidence, both visual and aural. As the Dallas Court of Appeals stated in *Chadwick:*

"... a suspect may be compelled to give physical evidence of his intoxication ... because physical evidence is not testimonial in nature ... we conclude that a recitation of the alphabet and counting backward are not testimonial in nature because these communications are physi-

cal evidence of the functioning of appellant's mental and physical faculties. The performance of these sobriety tests shows the condition of a suspect's body. Any indication of intoxication comes from a suspect's demeanor, the manner in which he speaks, and whether he has the mental ability to perform the tests correctly."

*Chadwick*, 766 S.W.2d at 821.

Appellant concedes that visual taping of a DWI suspect's performance on sobriety tests does not implicate the suspect's Fifth Amendment rights. Moreover, she recognizes that such visual recordings are statutorily provided for in Tex.Rev.Civ.Stat. Art. 6701*l*–1 note, Section 24.[4] However, she maintains that the accompanying audio track for such a visual recording should be inadmissible from the moment the suspect invokes her *Miranda* right to counsel. She argues that there is no legitimate reason for juries to hear the audio.

We cannot agree that audio portions of sobriety test videos should be *per se* inadmissible following a request for counsel. Legitimate reasons for their admission do, in fact, exist. The audio portion of the tape serves as a general interpretive aid to the visual record. It also provides a physical exemplar of the suspect's manner of speech at the time of arrest. *Chadwick*, 766 S.W.2d at 821. A jury may use the quality of the suspect's speech as evidence of her degree of intoxication. *Id.* Ability to enunciate words clearly can be highly probative of loss of "normal use of mental or physical faculties," which the State must prove under Art. 6701*l*–1(a)(2)(A), V.T.C.S. Similarly, a test of ability to read aloud can be probative in the case of a literate suspect. As long as the suspect's statements

---

**4.** "Sec. 24. (a) Each county with a population of 25,000 or more according to the most recent federal census shall purchase and maintain electronic devices capable of visually recording a person arrested within the county for an offense under Article 6701*l*–1, Revised Statutes, or Subdivision (2), Subsection (a), Section 19.05, Penal Code.

"(b) The sheriff of the county shall determine upon approval by the county commissioners court the number of devices necessary to ensure that a peace officer arresting a de-

fendant for an offense listed in Subsection (a) of this section may visually record the defendant's appearance within a reasonable time after the arrest.

"(c) The fact that an arresting officer or other person acting on behalf of the state failed to visually record a person arrested for an offense listed in Subsection (a) of this section is admissible at trial of the offense if the offense occurred in a county required to purchase and maintain electronic devices under this section."

are not used for their truth but as circumstantial evidence from which the jury may infer degree of intoxication, the attending officers could testify about the statements anyway. Cf. *Miffleton*, 777 S.W.2d at 80 (holding that visual depictions of a suspect's appearance soon after arrest are admissible because officers could testify to the facts depicted). If testimony about the statements would be admissible, it defies logic to exclude a properly attested mechanical recording of the same statements.

Additionally, an accompanying soundtrack allows a jury to hear the suspect's volunteered statements; such statements have never been barred by *Miranda:*

> Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence … Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.

*Innis*, 446 U.S. at 300, 100 S.Ct. at 1689, quoting *Miranda*, 384 U.S. at 478, 86 S.Ct. at 1630.

■ All of these considerations impel us to hold that audio tracks from DWI videotapes should not be suppressed unless the police conduct depicted expressly or impliedly calls for a testimonial response not normally incident to arrest and custody or is *conduct the police should know is reasonably likely to elicit such a response.*[5] *Schmerber, supra,* and *Innis, supra.*

■ Police requests that suspects perform the sobriety tests and directions on how suspects are to do the tests do not constitute "interrogation;" neither do quer-

ies concerning a suspect's understanding of her rights. If the police limit themselves to these sorts of questions, they are not "interrogating" a DWI suspect.[6]

■ Applying the standard above to the facts in this case, we note that Officer Sanchez made no comments other than those necessary to inform appellant of her rights, determine whether she understood her rights, and instruct her concerning the sobriety tests. When appellant manifested confusion about her *Miranda* right to a lawyer, "When am I supposed to have a lawyer to do all of this stuff? … I can do all of this stuff by myself?", Officer Sanchez correctly informed her that her lawyer did not have to be present for the sobriety tests.

Because Officer Sanchez' comments and questions were limited to those normally attendant to the arrest and custody of a DWI suspect, and because his conduct did not seek, nor was it likely to result in incriminating *testimonial* evidence, we hold that his conduct was not interrogation. Due to this holding we fail to reach the issue of whether appellant's statements, which did not directly admit her guilt, were incriminating.[7]

We reverse the judgment of the Court of Appeals and affirm the judgment of the trial court.

CLINTON, J., concurs in the result.

TEAGUE, J., dissents.

---

5. The Court of Appeals might have reasoned that videotaping DWI suspects performing sobriety tests is "likely to elicit an incriminating response" because the inherent compulsion in police custody plus a suspect's possible intoxication might render her unable to resist making incriminating statements. Although this reasoning may appear attractive, the *Miranda* safeguards do not exist to protect suspects from the compulsion inherent in custody alone, nor do they protect suspects from their own propensity to speak, absent some police conduct which knowingly tries to take advantage of the propensity. See *Innis*, 446 U.S. at 300, 100 S.Ct. at 1689, and *Innis*, 446 U.S. at 303, 100 S.Ct. at 1691, especially footnote 10.

6. This is not to say that the warnings given to DWI suspects in Texas are not unduly confusing, especially to laymen. See *McCambridge v. State*, 712 S.W.2d 499, 506–07 (Tex.Cr.App. 1986), esp. fn.s 17 and 18.

7. We note, however, that the *Miranda* definition of "incriminating" is extremely broad: any inculpatory or exculpatory statement that the prosecution might wish to introduce. See Footnote 5 to *Innis, supra,* quoting and explicating *Miranda supra.*