TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00458-CR







James Milton Fleming, Appellant



v.



The State of Texas, Appellee







FROM THE COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY


NO. 406297, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING








 Appellant James Milton Fleming was convicted in a jury trial of the misdemeanor
offense of driving a motor vehicle in a public place while intoxicated. Act of May 27, 1983, 68th
Leg., R.S., ch. 303, § 3, 1983 Tex. Gen. Laws 1568, 1575 (Tex. Rev. Civ. Stat. Ann. art.
6701l-1(b), since amended and codified at Tex. Penal Code Ann. § 49.04). The trial court
assessed appellant's punishment at confinement in the county jail for forty-five days and a fine of
$100.00.

 Appellant presents six points of error in which he asserts that the trial court erred
in admitting portions of an audiotape and in amending the jury instructions after the jury had
retired to deliberate. He also urges that the evidence is insufficient to support the verdict because
of a fatal variance between the information and the original jury instructions. We will affirm the
judgment.

 In his first and second points of error, appellant urges that the jury was allowed to
hear an audiotape in which he invoked his right to counsel while under arrest thus violating both
his federal and state constitutional right to counsel. U.S. Const. amends. V, VI, & XIV; Tex.
Const. art. I, § 10. Appellant concedes that his state right to counsel is no greater than his federal
right. The Court of Criminal Appeals has observed that evidence of an accused invoking his or
her right to counsel may be construed adversely as an inference of guilt. Hardie v. State, 807
S.W.2d 319, 322 (Tex. Crim. App. 1991). Therefore, that court held that evidence of a
defendant invoking his or her right to counsel while under arrest is inadmissible as evidence of
guilt. Id. at 322; see Miffleton v. State, 728 S.W.2d 880 (Tex. App.--Austin 1987), aff'd, 777
S.W.2d 76 (Tex. Crim. App. 1989); Rezac v. State, 722 S.W.2d 32 (Tex. App.--Dallas 1986),
rev'd on other grounds, 782 S.W.2d 869 (Tex. Crim. App. 1990).

 The State stoutly maintains that appellant failed to preserve the alleged error for
review. We disagree. A fair interpretation of the record shows the error was preserved for
review. Appellant filed but failed to obtain a formal ruling on his motion to suppress the evidence
of his invocation of the right to counsel. However, after the jury was selected and just before
evidence was offered, the court and the parties agreed that the jury should not hear certain
portions of the audiotape. The record shows:



(JURY OUT.)



THE COURT:  Pursuant to, I guess, the defendant's oral motion to suppress that
we heard outside the presence of the jury regarding the videotape that the State is
seeking to admit, these are the following portions of that tape, from the counter on
the tape that are not admitted.


From 3 -- I am assuming that's 3 minutes 12 seconds, the videotape is off.


From 4 minutes 26 seconds to 4 minutes 32 seconds, the videotape is off.


From 5 minutes 39 seconds to 5 minutes 44 seconds, the video tape is off.


[PROSECUTOR]:  We have some discrepancy.


I am sorry, Your Honor. You said off from 4:26 to 4:32?


THE COURT:  Correct.


[PROSECUTOR]:  Okay.


THE COURT:  On -- or actually 4:34.


[PROSECUTOR]:  And then we have off 5:39, on 5:44.



 The court and the parties were referring to the time track on the tape in designating
the portions of the tape which should not be heard by the jury. The court and the parties decided
that the time counter on the television set would be used to silence the audiotape at the times
decided inadmissible. Unfortunately, the time counter on the television set and the time track on
the tape did not match. Therefore, when the tape was played in the presence of the jury, appellant
could be heard invoking his right to counsel, and the arresting officer could be heard telling
appellant that he would be charged with carrying a prohibited weapon. The trial court explained:



THE COURT:  Let me state for the record that I don't think we have had any
pretrial rulings prior to today on this case, have we not? We did not have a
pretrial hearing?


[PROSECUTOR]:  No, we did not, Your Honor.


THE COURT:  What happened in this instance is that you all told me there were
certain portions of the tape that you thought should not be played in front of the
jury. And I said, "Okay, we will watch that before the jury trial begins." Then
the three of us, myself, the State, and the defense, went into the jury room and
pretty much wrote down and agreed to what portions of the tape should not be
viewed. I did not formally address any motions and have not to this point. But on
our agreement, we had agreed that certain portions of that tape would not be
played in front of the jury.

 

Then, and you-all correct me if I am wrong, we decided that since the display was
working on the television, that we would use that display to track those portions
of the tape which we read earlier into the record before we even started today.


And as I explained earlier, apparently that is not constant. So there was a
problem. And now we have redone that. That is what has happened up to this
point. So it is actually through no fault of anyone, I should say, that that was
done. But the tape itself just did not function the way we thought it was going to,
the tape player.


So, anyway, your request at this time was for a mistrial. And I am going to deny
that request for a mistrial. I am willing, however, prior to doing that, to call the
jurors in individually and ask them exactly what they heard on the tape, if you
wish me to do so.


[DEFENSE COUNSEL]:  If you will do it individually, I think you should see
what they did hear.



In these circumstances, we hold that the alleged error was preserved for review.

 We must now determine whether the error was so harmful as to require reversal
of the judgment. Tex. R. App. P. 81(b)(2); Hardie, 807 S.W.2d at 322; Harris v. State, 790
S.W.2d 568 (Tex. Crim. App. 1989); Johnson v. State, 841 S.W.2d 562, 565 (Tex. App.
Eastland 1992), rev'd on other grounds, 869 S.W.2d 347 (Tex. Crim. App. 1994).

 In an apparent attempt to determine the harm done and to mitigate harm from the
tape playing fiasco, each juror's testimony was recorded. Two jurors testified they heard
appellant ask for counsel, while four jurors testified they did not hear appellant ask for counsel. 
Although appellant argues the court's admonition to the jury to disregard the inadmissible
evidence was not precise and was insufficient, there was an attempt to instruct the jury to
disregard the inadmissible evidence.

 The inadmissible evidence admitted before the jury was not the result of
overzealous prosecution, but resulted from an unfortunate misunderstanding of how the counter
on the television set worked. Other evidence proved overwhelmingly that appellant was
intoxicated while driving his truck in a public place.

 Benny James Black, an assistant manager of a Church's Fried Chicken restaurant
noticed that appellant had difficulty entering the restaurant. Appellant stumbled on the threshold
and when he placed his order, Black smelled a strong odor of an alcoholic beverage on appellant's
breath. Appellant slurred his words, needed help ordering, fumbled for his money, and offered
Black one dollar to pay for more than five dollars worth of food. When appellant left Church's,
he bumped into the divider between the doors and attempted to open the door on the hinge side. 
After having difficulty opening the door, appellant got in his truck and drove around the restaurant
to leave. Black, concerned that appellant was too intoxicated to drive, notified Tom Lawrence
Sweeney, a City of Austin police officer who was on duty nearby. Sweeney found it difficult to
stop appellant. After he stopped appellant, the officer asked him to get out of his truck. 
Appellant stumbled and grabbed the truck to maintain his balance. Sweeney testified that
appellant fumbled with his wallet and drivers license and that appellant's breath had the strong
odor of an alcoholic beverage. Appellant's eyes were bloodshot, his speech was slurred, and he
could not keep his balance without touching his truck. Appellant failed the field sobriety tests
administered by Sweeney. Sweeney arrested and handcuffed appellant, who became belligerent
and used profanity. At the police station, appellant refused to perform sobriety tests or to take
an intoxilizer test. On the video-audiotape exhibited to the jury, appellant appeared
uncooperative, belligerent, and slurred his speech.

 Police officer Allen P. Anderson, a veteran with twenty-three years of service, was
on the scene as a back-up officer when appellant was arrested. Anderson observed appellant's
failure of the field sobriety tests, and in Anderson's opinion, appellant was "beyond intoxicated"
and did not have the normal use of his mental and physical faculties.

 Appellant testified in his defense that before being arrested he was tired from
making a four-hour drive from the coast where he and two of his children had been fishing. He
testified that he had been up since early morning and that while he drank several "beers" earlier,
he was not intoxicated at the time he was arrested. George Erwin, who was incarcerated in the
city jail, testified he met appellant in jail. In Erwin's opinion, appellant was not intoxicated when
he met him.

 We have followed the dictates of the Court of Criminal Appeals by isolating the
error and focusing on the integrity of the process to determine whether the error was of the
magnitude that it might have disrupted the jury's evaluation of the evidence to the extent that
appellant did not receive a fair trial. See Harris, 790 S.W.2d at 587-88. The error in playing the
inadmissible portion of the tape within the hearing of the jury was accidental not intentional. The
error is not likely to be repeated. The State did not emphasize the error. Four of the jurors
testified they did not even hear the inadmissible portion of the tape. Applying the Harris
standard, we recognize, as did the Harris Court, that overwhelming evidence can be a factor in
our consideration. Id. We find that a rational trier of fact would not have reached a different
result in the absence of the error and its effects. We conclude beyond a reasonable doubt that the
accidental admission of the inadmissible evidence did not contribute to appellant's conviction or
his punishment. Points of error one and two are overruled.

 In points of error three and four, appellant asserts that the trial court erred in
allowing the jury to hear the audiotape that was recorded after he invoked his federal and state
constitutional rights. U.S. Const. amend. V & XIV; Tex. Const. art. I, § 10. When a suspect,
while in custody, invokes his right to counsel, police are not prohibited from obtaining videotapes
of the suspect performing sobriety tests. Visual depiction of a suspect's physical condition does
not fall within the federal or state privilege against self-incrimination. Miffleton v. State, 777
S.W.2d 76, 80-81 (Tex. Crim. App. 1989). The state privilege against self-incrimination, like
its federal counterpart, only applies to testimonial compulsion. Id. at 81; Olson v. State, 484
S.W.2d 756, 772 (Tex. Crim. App. 1972). A defendant's taped statements made in response to
custodial interrogation after invocation of the right to counsel are not admissible, and on proper,
timely objection, such statements should be suppressed. Miffleton, 777 S.W.2d at 81. However,
the portions of audiotaped sobriety tests recorded after a defendant's request for counsel are not
inadmissible per se. Jones v. State, 795 S.W.2d 171, 175 (Tex. Crim. App. 1990). Portions of
an audiotape, other than the response to custodial interrogation, may be admitted in evidence. Id. 
Those portions of the audiotape may serve as a general interpretive aid to the visual record, and
the audiotape also provides a physical exemplar of the suspect's manner of speech at the time of
his arrest. Id. A jury may use the quality of a suspect's speech as evidence of the suspect's
degree of intoxication, and the inability to enunciate words clearly can be probative of the loss of
normal use of mental and physical faculties which the State must prove. Id. Moreover, an
audiotape allows a jury to hear a suspect's volunteered statements because volunteered statements
are not constitutionally barred. Miranda v. Arizona, 384 U.S. 436, 478 (1966); Jones v. State,
795 S.W.2d 171, 176 (Tex. Crim. App. 1990).

 The State insists the error alleged in points three and four was not preserved for
review and we agree based on our review of the entire record. Appellant points out paragraphs
in his pretrial motion to suppress in which he requested suppression of all "statements, written or
oral of defendant" and "any testimony concerning the action of the defendant" after his arrest. 
These parts of the motion to suppress are not specific enough to designate the matter complained
of in these points of error. Moreover, the record shows that the motion to suppress was not ruled
on by the trial court. Our reading of the record does not reveal that these matters were the subject
of agreement of the court and counsel as were those matters raised in points of error one and two.

 During trial, counsel moved for a mistrial, but he did not articulate a specific
objection that comports with his grounds and argument on appeal. Also, because some portions
of the audiotape made after appellant requested counsel are admissible, it was incumbent on
appellant to separate the portions he believed were inadmissible from the admissible portions of
the audiotape and to articulate his grounds for objection to the portions of the tape he believed
were inadmissible. The record does not show that the trial court had a fair opportunity to rule on
the admissibility of the portions of the tape which appellant now claims were inadmissible. Points
of error three and four are overruled.

 In his fifth point of error, appellant asserts that the trial court erred when, after the
jury retired to deliberate, the trial court amended the jury instructions over appellant's objection. 
The jury instructions originally submitted required the jury to find the offense was committed on
"a street or highway." The information charged that the offense was committed "in a public place
. . . a parking lot." Proof supported this allegation. The trial court amended the jury
instructions, after jury arguments, to conform to the information's allegation that the offense was
committed in a public place on "a parking lot." The Code of Criminal Procedure provides that
after argument begins, no further instruction shall be given the jury, and provides some exceptions
not applicable in this case. Tex. Code Crim. Proc. Ann. art. 36.16 (West 1981). However, the
Court of Criminal Appeals has consistently held that this provision of the code does not prevent
the amendment of jury instructions even after jury deliberation has commenced. See, e.g., Nowlin
v. State, 175 S.W. 1070, 1072 (Tex. Crim. App. 1915); Bustillos v. State, 464 S.W.2d 118, 125-26 (Tex. Crim. App. 1971). The Court of Criminal Appeals has recently reviewed, approved,
and reaffirmed these authorities. Robert Smith v. State, No. 71 433, slip. op. at 24-27 (Tex.
Crim. App. Mar. 8, 1995). This line of cases controls our decision. The trial court did not err
in amending the jury instructions. Appellant's fifth point of error is overruled.

 In his sixth point of error, appellant urges that because of the variance between the
information's allegations and the original jury instructions the evidence is insufficient to support
the jury's verdict and that he is therefore entitled to an acquittal. We have held the original jury
instructions were properly amended. Therefore, this point of error is without merit. Appellant's
sixth point of error is overruled.

 The judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Chief Justice Carroll, Justices B. A. Smith and Dally*

Affirmed

Filed: July 12, 1995

Do Not Publish







* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).