COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO. 2-08-180-CR

 

 

SHAWN MCDERMOTT                                                          APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








A jury
convicted Appellant Shawn McDermott of felony driving while intoxicated (DWI),
and the trial court sentenced him to twenty years=
confinement in the Institutional Division of the Texas Department of Criminal
Justice and a $10,000 fine.  In his sole
issue, Appellant challenges the legal and factual sufficiency of the evidence
to support his conviction.  Because we
hold that the evidence is both legally and factually sufficient, we affirm the
trial court=s judgment.

                                                 Facts

As
Rodney Yard was driving to work on November 30, 2006, at around 3:30 a.m., he
saw a red Dodge truck approaching from the opposite direction.  Yard testified that the truck swerved out of
its lane and into his lane twice.  Then,
after hitting a guard rail on the other side of the road, the truck swerved
into Yard=s lane a third time and crashed
into Yard=s car, even though, Yard
testified, he had attempted to move out of the way.  Both vehicles stopped, and a passer-by also
stopped to ask Yard if he was all right. 
Yard testified that the truck had stopped approximately fifty to a
hundred feet away from his car, and that when he attempted to approach the
truck, the driver accelerated and drove off. 
Yard was not able to see the driver well but was able to see that the
driver=s hair
was Ashort . . . and . . . blondish.@  Yard also testified that there were no street
lights in the vicinity of the accident and that it was still dark at the time
of the accident.








Yard
called 911, followed the red truck, and watched it moving as though, in Yard=s
opinion, the driver of the truck was intoxicated.  Yard continued to follow the truck until the
dispatcher told him that officers were behind the truck and asked Yard to wait
at a nearby gas station.  The officers
later came to the gas station to take pictures of Yard=s car
and to question Yard about what had happened.

When the
four officers stopped the truck, Appellant was driving it.  They questioned him about the accident, and
he admitted that he had been driving and had hit a pole.  The officers saw that Appellant swayed a
little, and they smelled a moderate odor of alcohol.  An officer also said that Appellant=s speech
was slow and slurred at times and that he did not seem cold in the chilly
weather, despite the fact that he did not have a jacket.  The officer admitted, however, that the
dashboard camera video showed Appellant acting as though he was cold and that
Appellant sat in the squad car to stay warm while waiting.  The officer also admitted that many of the
characteristics Appellant exhibited were similar or the exact characteristics
of people who were overly tired or exhausted. 
The officer admitted that the only characteristic Appellant exhibited
that was different from someone suffering from exhaustion was the moderate
smell of alcohol, and he also admitted that the smell of alcohol can linger for
several hours after it has been consumed.








Appellant
gave the officer permission to search his truck, and no alcohol was found
inside the vehicle.  The officers
concluded that Appellant was intoxicated from alcohol.  No field sobriety tests were offered to
Appellant at the scene.  The officers
testified that the reasons for delaying the field sobriety tests were the
weather and conditions at the scene and the fact that the officers who had
stopped Appellant were outside their city limits.

Appellant
was arrested and taken to the police station, where he refused to give a breath
sample.  Field sobriety tests were
finally administered at the station.

                                         Legal
Sufficiency 

In his
first point, Appellant argues that the evidence is legally insufficient to
prove that he had lost the normal use of his mental or physical faculties due
to the introduction of alcohol.

In
reviewing the legal sufficiency of the evidence to support a conviction, we
view all of the evidence in the light most favorable to the prosecution in
order to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.[2]








This
standard gives full play to the responsibility of the trier of fact to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.[3]  The trier of fact is the sole judge of the
weight and credibility of the evidence.[4]  Thus, when performing a legal sufficiency
review, we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the factfinder.[5]  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@[6]  We must presume that the factfinder resolved
any conflicting inferences in favor of the prosecution and defer to that
resolution.[7]








The
sufficiency of the evidence should be measured by the elements of the offense
as defined by the hypothetically correct jury charge for the case.[8]  Such a charge would be one that accurately
sets out the law, is authorized by the indictment, does not unnecessarily
restrict the State=s theories of liability, and
adequately describes the particular offense for which the defendant was tried.[9]  However, we may not affirm a conviction based
on legal or factual grounds that were not submitted to the jury.[10]  The law as authorized by the indictment means
the statutory elements of the charged offense as modified by the charging
instrument.[11]

Rodney
Yard, the man whose car was hit by the red truck at approximately 3:30 a.m.,
testified to Appellant=s erratic driving, his swerving
out of his lane and into Yard=s lane,
his hitting a guard rail, his hitting Yard=s car,
and his fleeing the scene.[12]  Yard immediately followed the truck, and
there is no suggestion that anyone other than Appellant was driving.  Flight is a circumstance from which a jury
may draw an inference of guilt.[13]








The
officers testified that Appellant swayed a little and that they smelled a
moderate odor of alcohol about his person. 
There was also evidence that Appellant=s eyes
were bloodshot and glassy.  Evidence of
intoxication may include unsteady balance, bloodshot eyes, and the odor of
alcohol on a suspect.[14]  Officer Roy testified that Appellant=s speech
was slow and slurred, making him incoherent at times and difficult for the
officers to understand.  They had to ask
Appellant to repeat what he said.  The
quality of a suspect=s speech can be evidence of
intoxication.[15]

The
field sobriety tests were administered approximately two hours after the truck
struck Yard=s car.  Officer Pennington performed a horizontal
gaze nystagmus test at the station and claimed to have observed Aa total
of six clues.@ 
Although the officer did not properly demonstrate the walk-and-turn test
for Appellant, in that he turned the wrong direction and bumped into the
intoxilyzer machine, Appellant did perform the turn correctly.  But Appellant also stepped off the line twice
and swayed during the officer=s
demonstration.  Appellant did well on the
one-leg stand until the end, when he stepped back for balance and then went
back into position and started to count again. 
Appellant refused to take a breath test. 
The Texas Court of Criminal Appeals has held that the jury may consider
the refusal to take a breath test.[16]

Applying
the appropriate standard of review, we hold that the evidence is legally
sufficient to support Appellant=s
conviction.








                                        Factual
Sufficiency

When
reviewing the factual sufficiency of the evidence to support a conviction, we
view all the evidence in a neutral light, favoring neither party.[17]  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
factfinder=s determination is clearly wrong
and manifestly unjust or whether conflicting evidence so greatly outweighs the
evidence supporting the conviction that the factfinder=s
determination is manifestly unjust.[18]  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.[19]








In
determining whether the evidence is factually insufficient to support a
conviction that is nevertheless supported by legally sufficient evidence, it is
not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@[20]  We cannot conclude that a conviction is
clearly wrong or manifestly unjust simply because we would have decided
differently than the jury or because we disagree with the jury=s
resolution of a conflict in the evidence.[21]  We may not simply substitute our judgment for
the factfinder=s.[22]  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@[23]  Thus, unless we conclude that it is necessary
to correct manifest injustice, we must give due deference to the factfinder=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@[24]  Our deference in this regard safeguards the
defendant=s right to a trial by jury.[25]








Appellant
argues that the evidence is factually insufficient to support his conviction
because the odor of alcohol was merely moderate.  A moderate amount of alcohol does not
necessarily mean intoxication.  The
officers testified that Appellant did not seem cold, despite the weather
conditions, but the record contains evidence that he was cold, although perhaps
not as cold as the officers thought he should have been.  Appellant talked slowly and thoughtfully when
answering the officer=s questions.  Being thoughtful is not necessarily evidence
of intoxication.  The delay in giving
Appellant a field sobriety test did not indicate whether Appellant was
intoxicated at the time he operated the truck. 
The tests were administered at 5:30 a.m., an hour at which, Appellant
argues, his exhaustion would be overwhelming, affecting his body=s
reactions, balance, and speech as well as comprehension of the instructions
given to him.  The officers admitted
that, with the exception of the moderate odor of alcohol, all of the symptoms
Appellant exhibited were also consistent with exhaustion.

Nevertheless,
we note that when Yard observed Appellant=s
driving, the driving was erratic, dangerous, and consistent with
intoxication.  When the officers pulled
him over, there was a moderate odor of alcohol about Appellant's person, his
eyes were bloodshot and glassy, and he was slightly unsteady on his feet.  Applying the appropriate standard of review,
we hold that the evidence is factually sufficient to support Appellant=s
guilt.  We overrule his sole issue.








                                             Conclusion

Having
overruled Appellant=s sole issue on appeal, we
affirm the trial court=s judgment.

 

PER CURIAM

 

 

PANEL: 
DAUPHINOT, J.; CAYCE, C.J.; and LIVINGSTON, J.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  April 2, 2009











[1]See Tex. R. App. P. 47.4.





[2]Jackson v. Virginia, 443 U.S. 307, 319, 99
S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778 (Tex.
Crim. App. 2007).





[3]Jackson, 443 U.S. at 319, 99 S.
Ct. at 2789; Clayton, 235 S.W.3d at 778.





[4]See Tex. Code Crim. Proc.
Ann. art. 38.04 (Vernon 1979); Brown v. State, 270 S.W.3d 564, 568 (Tex.
Crim. App. 2008).





[5]Dewberry v. State, 4 S.W.3d 735, 740 (Tex.
Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).





[6]Hooper v. State, 214 S.W.3d 9, 16B17 (Tex. Crim. App.
2007).





[7]Jackson, 443 U.S. at 326, 99 S.
Ct. at 2793; Clayton, 235 S.W.3d at 778.





[8]Grotti v. State, 273 S.W.3d 273, 280
(Tex. Crim. App. June 25, 2008); Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997).





[9]Gollihar v. State, 46 S.W.3d 243, 253
(Tex. Crim. App. 2001); Malik, 953 S.W.2d at 240.





[10]Malik, 953 S.W.2d at 238 n.3.





[11]See Curry v. State, 30 S.W.3d 394, 404
(Tex. Crim. App. 2000).





[12]See Martinez v. State, 66 S.W.3d 467, 469
(Tex. App.CHouston [1st Dist.] 2001,
pet. ref=d).





[13]Valdez v. State, 623 S.W.2d 317, 321
(Tex. Crim. App. 1979).





[14]See Cotton v. State, 686 S.W.2d 140, 149 n.3
(Tex. Crim. App. 1985).





[15]See Jones v. State, 795 S.W.2d 171, 175
(Tex. Crim. App. 1990).





[16]Gladdis v. State, 753 S.W.2d 396, 399
(Tex. Crim. App. 1988).





[17]Neal v. State, 256 S.W.3d 264, 275 (Tex.
Crim. App. 2008); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App.
2006).





[18]Lancon v. State, 253 S.W.3d 699, 704
(Tex. Crim. App. 2008); Watson, 204 S.W.3d at 414B15, 417.





[19]Watson, 204 S.W.3d at 417.





[20]Id.





[21]Id.





[22]Johnson v. State, 23 S.W.3d 1, 12 (Tex.
Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App.
1997).





[23]Johnson, 23 S.W.3d at 8.





[24]Id. at 9.





[25]Lancon, 253 S.W.3d at 704.