**Affirmed and Memorandum Opinion filed December 21, 2023.**



In The

# Fourteenth Court of Appeals

## NO. 14-22-00346-CR

**JOSE TRINIDAD TORRES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 212th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 20-CR-2794**

## MEMORANDUM OPINION

Appellant Jose Trinidad Torres appeals his conviction for assault family violence/impeding breath or circulation, arguing the trial court erroneously denied his motion to suppress statements he made to the police. We affirm.

### BACKGROUND

Complainant and Appellant were in a dating relationship and lived together in a home as boyfriend and girlfriend. In September 2020, Complainant and

Appellant drove to Galveston to go night fishing. After fishing for a while, Complainant fell asleep. When Complainant woke up, Appellant started screaming at her and instructed her to help pack up their things into the car. Appellant wanted Complainant to drive the car because he was tired, but she told him that she was uncomfortable driving. He continued to yell at Complainant and then started driving home. At some point, Appellant pulled into a parking lot and told Complainant to get out of the car. When she refused to get out of the car, Appellant started hitting her and pulling her hair. Appellant then took Complainant by the throat, squeezed it very hard, forced her out of his car, and drove away. Complainant called the police.

Galveston Police Officer Douglas was dispatched to the scene to investigate Complainant's domestic violence call. As part of the investigation, Officer Jamuhawski of the Fort Bend Sheriff's Office was dispatched to check Appellant's and Complainant's residence. He parked near the residence and, about 40 minutes later, Complainant arrived at the house in a cab. A few minutes later, Appellant drove by the house. Officer Jamuhawski followed Appellant and saw him running a stop sign. Officer Jamuhawski initiated a traffic stop. He told Appellant the reason for the stop and that Appellant was being detained "pursuant to a Galveston investigation." Officer Jamuhawski transported Appellant to Galveston for further investigation. During the ride in Officer Jamuhawski's police car, Appellant initiated conversation with Officer Jamuhawski.

In January 2021, Appellant was indicted with the third degree felony offense of assault family violence/impeding breath or circulation. *See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(2)(B). The indictment included two enhancement paragraphs, in which the State alleged that Appellant had been convicted of (1) "the felony offense of Assault Bodily Injury - 2nd Offender - Family Violence";

2

and (2) "the felony offense of Robbery - Bodily Injury."

A three-day trial was held from April 6, 2022. The jury found Appellant guilty as charged. The jury also found the allegations in both enhancement paragraphs true and assessed Appellant's punishment at 40 years' confinement. The trial court signed a judgment in accordance with the jury's verdict on April 11, 2022. Appellant filed a timely notice of appeal.

## ANALYSIS

Appellant argues the trial court erroneously denied his motion to suppress statements he made while riding in Officer Jamuhawski's patrol car because Officer Jamuhawski, without giving Appellant *Miranda* warnings, "engaged Appellant in conversation prompting the challenged statements."

## I. Standard of Review and Governing Law

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Igboji v. State*, 666 S.W.3d 607, 612 (Tex. Crim. App. 2023). We afford almost total deference to a trial court's determination of historical facts and credibility when supported by the record. *State v. Hardin*, 664 S.W.3d 867, 871 (Tex. Crim. App. 2022). Likewise, we give almost total deference to a trial court's ruling on mixed questions of law and fact, if the resolution to those questions turns on the evaluation of credibility and demeanor. *Id*. at 871-72. When the trial court makes explicit findings of fact, as in this case, we determine whether the evidence (viewed in the light most favorable to the trial court's ruling) supports these fact findings. *See id*. However, we conduct a *de novo* review when reviewing a trial court's application of law to facts that do not depend on credibility and demeanor. *Monjaras v. State*, 664 S.W.3d 921, 926 (Tex. Crim. App. 2022). We also review a trial court's legal conclusions *de novo*. *Hardin*, 664

S.W.3d at 872.

The Fifth Amendment to the United States Constitution protects against custodial interrogation by the police without proper procedural safeguards. *See Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980); *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The warnings required by *Miranda* are intended to safeguard a person's privilege against self-incrimination during custodial interrogation. *Gardner v. State*, 306 S.W.3d 274, 294 (Tex. Crim. App. 2009). However, "the *Miranda* safeguards do not exist to protect suspects from the compulsion inherent in custody alone, nor do they protect suspects from their own propensity to speak, absent some police conduct which knowingly tries to take advantage of the propensity." *Jones v. State*, 795 S.W.2d 171, 176 n.5 (Tex. Crim. App. 1990) (en banc). A defendant bears the burden of proving his statement was the product of custodial interrogation. *Gardner*, 306 S.W.3d at 294; *Herrera v. State*, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007).

An "interrogation" for purposes of *Miranda* refers to "(1) express questioning and (2) 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *Alford v. State*, 358 S.W.3d 647, 653 (Tex. Crim. App. 2012) (quoting *Innis*, 446 U.S. at 301). As conceptualized in *Miranda*, interrogation must reflect a measure of compulsion above and beyond that inherent in custody itself. *See Innis*, 446 U.S. at 300. Thus, if a defendant's freely and voluntarily given statements do not stem from custodial interrogation, then the protections afforded by *Miranda* do not apply. *See Innis*, 446 U.S. at 300-01; *Esparza v. State*, No. 74,096, 2003 WL 21282765, at *1 (Tex. Crim. App. June 4, 2003) (en banc) (not designated for publication).

## II.    Evidence and Application

Here, Appellant filed a pretrial motion to suppress all written and oral statements made by him "to any law enforcement officers or others in connection with this case, and any testimony by the law enforcement agents or any other law enforcement officers or others concerning any such statements."

During Officer Jamuhawski's testimony at trial but outside the jury's presence, the State informed the trial court that it intended to ask the officer about statements Appellant had made while riding in his patrol car.  The State stated:

> At this point, I'm going to be asking a question of the deputy of a statement made by Mr. Torres.  Now, it is very clear that he is in custody at this time.  But when you watch the tape, it is not a custodial interrogation.  Mr. Torres is freely having a conversation with the officer in which he is engaging with the officer, he is asking the officer questions, he is asking the officer questions from his favorite music to what he likes to do with free time.  It's not a custodial interrogation.  At one time, not in response to a question asked [by the] officer, Mr. Torres says, "You know, I'm tired.  I just want to go home and go to sleep."  To which the officer replies, "Sorry, man."  To which, then, Mr. Torres, of his own volition, offers a statement in which he says, "Yeah.  I got myself into this situation."  The officer responds, "Well, man, you know, you just got to man up.  That's what you" — "you know, just man up."  To which Mr. Torres then says, "I don't have to."

Appellant objected to the State questioning the officer about any statements Appellant made while riding in the patrol car because (1) a "Miranda warning should have been given because he was detained"; and (2) "[w]ithout a Miranda warning, anything that [Appellant] may or may not have said should not be admissible."  The State again conceded that Appellant was in custody but argued that the statements were not made in response to any questioning or interrogation by the officer and were therefore admissible.  The trial court then viewed the portion of the body camera video containing the particular interactions and

statements made by Appellant. After hearing further argument, the trial court overruled Appellant's objection, granted Appellant a running objection, and allowed the State to continue questioning the officer regarding Appellant's statements.

Officer Jamuhawski testified that Appellant started talking to him and asking him questions during the car ride from Sugar Land to Galveston. At some point, Appellant told Officer Jamuhawski that he was tired and wanted to go home and sleep to which Officer Jamuhawski responded, "I'm sorry." Officer Jamuhawski testified that he did not ask Appellant any questions at the time and that Appellant continued stating, "I got myself into this." Officer Jamuhawski responded by telling Appellant "[s]omething like man up" but Appellant responded, "I don't have to." Officer Jamuhawski also testified that he never asked Appellant any questions about what had happened in Galveston.

Post-trial, the trial court also issued findings of fact and conclusions of law. As relevant, the trial court found that (1) Officer Jamuhawski "is a credible witness, and the Court accepts as true his testimony"; (2) Officer Jamuhawski "transported [Appellant], handcuffed, in his patrol car to a location" in Galveston; (3) Officer Jamuhawski "testified that he had no knowledge of the facts or circumstances surrounding the Galveston investigation"; (4) the State argued that during Officer Jamuhawski's entire interaction with Appellant, he did not ask Appellant any questions about what had occurred in Galveston and the "defense did not dispute or object to the State's description of said interaction"; (5) Officer Jamuhawski "testified that during his transport of [Appellant], [Appellant] began talking to [Officer] Jamuhawski and asked [Officer] Jamuhawski general questions" but Officer Jamuhawski never asked Appellant about what had occurred in Galveston; and (6) none of the statements Appellant made to Officer

6

Jamuhawski "were in response to a question asked by Jamuhawski" nor did the officer "threaten, coerce, compel, force, or persuade [Appellant] into making any statements."

The trial court also concluded, as relevant, that (1) Appellant was in custody at the time of the challenged statements; (2) Appellant initiated communications with Officer Jamuhawski and all challenged statements were volunteered; (3) at no point did Officer Jamuhawski engage in interrogation; and (4) based on the testimony and the video, no *Miranda* warnings were required because Appellant's statements were not the result of a custodial interrogation.

On appeal, Appellant contends the trial court erroneously denied his "motion to suppress the un-*Mirandized* statements he made while riding in" the patrol car because Officer Jamuhawski "engaged Appellant in conversation prompting the challenged statements." We disagree.

The evidence does not support Appellant's assertion that Officer Jamuhawski engaged Appellant in conversation or tried to befriend Appellant. However, the evidence supports the trial court's finding that Officer Jamuhawski never asked Appellant any questions or interrogated him. Appellant was the one who asked the officer questions and initiated conversation. Also, the State described Appellant's recorded conversation during the car ride as Appellant asking Officer Jamuhawski "what kind of music he likes," "what he likes to do with free time," and "talking about sports teams." The State explained that Appellant was "freely having a conversation with the officer in which he is engaging with the officer." Appellant did not dispute the State's description of the communication and that Officer Jamuhawski never questioned Appellant during the car ride but that it was Appellant who engaged Officer Jamuhawski and volunteered statements. Nor does Appellant point to any evidence showing that

7

Appellant was interrogated at any point during his transport.

We agree with the trial court that Appellant was not interrogated by Officer Jamuhawski while riding in the patrol car and that Appellant freely volunteered the challenged statements. Because the evidence shows that Appellant made the challenged statements voluntarily and not in response to questioning by Officer Jamuhawski or any words or actions the officer should have known were reasonably likely to elicit an incriminating response, we conclude the trial court did not err in denying Appellant's motion to suppress the statements on the grounds that Appellant was not required to receive *Miranda* warnings as his statements were not the result of custodial interrogation. *See Lam v. State*, 25 S.W.3d 233, 239-40 (Tex. App.—San Antonio 2000, no pet.) (holding trial court did not err in admitting into evidence defendant's volunteered statement when defendant initiated conversation by asking officer about his case and "blurted out statement" in response to officer's attempt to change topic of conversation); *Carter v. State*, No. 01-17-00159-CR, 2018 WL 5259895, at *2 (Tex. App.—Houston [1st Dist.] Oct. 23, 2018, no pet.) (mem. op., not designated for publication) (finding trial court did not err in denying defendant's motion to suppress statements on grounds that he did not receive *Miranda* warnings when the evidence demonstrates that defendant made the statements voluntarily and not in response to police questioning); *see also Jones*, 795 S.W.2d at 176 n.5 ("[T]he Miranda safeguards do not exist to protect suspects from the compulsion inherent in custody alone, nor do they protect suspects from their own propensity to speak, absent some police conduct which knowingly tries to take advantage of the propensity.").

Accordingly, we overrule Appellant's issue.

## CONCLUSION

We affirm the trial court's judgment.

8

/s/ Meagan Hassan
Justice


Panel consists of Chief Justice Christopher and Justices Bourliot and Hassan.

Do Not Publish — Tex. R. App. P. 47.2(b).