TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-04-00591-CR






Roberto Valdez Garcia, Appellant


v.


The State of Texas, Appellee







FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT

NO. CR-02-092, HONORABLE RONALD GUY CARR, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N



 Roberto Valdez Garcia appeals his conviction for the felony offense of driving while
intoxicated. See Tex. Pen. Code Ann. § 49.04 (West 2003), § 49.09 (West Supp. 2004-05). A jury
found appellant guilty and the trial court assessed punishment at eight years' confinement with the
sentence probated to eight years of community supervision. In five issues, appellant challenges (i)
the admission of a DWI videotape made after his arrest showing him in handcuffs and (ii) the jury
charge. For the reasons that follow, we affirm the judgment of conviction.

 On January 5, 2002, shortly before 11 p.m., San Marcos Police Officer Loy Locke
was patrolling the interstate highway going north on the access road when a vehicle approached him
from behind at a rate of speed faster than he was traveling; it passed him in a no-passing zone. 
Locke activated his lights and followed the vehicle as it increased its speed. When the vehicle failed
to stop, Locke activated his siren. Over the next two miles, the vehicle crossed the center stripe four
times and at one point swerved to the right almost hitting a metal guardrail. The vehicle passed the
south entrance of an automobile dealership, entered the north entrance, and then returned to the
roadway. The vehicle then came to a stop in the parking lot of one of the stores at the Tanger outlet
mall. The car straddled two parking spaces.

 As appellant exited the truck, Officer Locke instructed him to return to his vehicle
and put his hands on the bed of the truck. At trial, Locke testified that appellant "staggered" over
to the truck and that he could smell alcohol on appellant's breath. Locke asked him where he was
going. Appellant replied that he was returning home to San Antonio. Appellant then stated that he
was coming from San Antonio. Locke asked him whether he had had anything to drink. Locke
testified that appellant "first replied that he had none." When Locke told him that he could smell
alcohol on his breath, appellant responded, "I drank a little." Locke observed that appellant's pants
were unzipped and the front of his pants appeared stained, perhaps with urine. 

 As the officer began to conduct field sobriety tests, appellant said that he did not want
to do them and began to walk away. He repeatedly told the officer that he "just wanted to go home." 
Observing that appellant's eyes were glassy and bloodshot, that he was unsteady on his feet, and that
his speech was slurred, Locke placed appellant under arrest. At trial, Locke testified that, based upon
his training, experience, and observations of appellant's behavior at the scene of the stop, he believed
that appellant was intoxicated. As Locke began to place a double set of handcuffs on appellant
because of his large size, appellant became agitated and began yelling and cursing at the officer. 
Locke called for a larger car to transport appellant to the jail.

 Upon arrival at the jail, an officer removed appellant's handcuffs to search him. 
Although he instructed appellant to place his hands on the wall, appellant kept turning toward the
officer. Locke testified that appellant was still agitated, upset, cursing, and complaining, and an
altercation ensued as the officers tried to search him and then calm him. When appellant "body
slammed" Locke, the officer replaced the handcuffs on him, placed him in a room, and removed the
handcuffs. They returned shortly thereafter to find him sitting on the toilet but dressed. Appellant
refused to stand up. His pants were still unzipped and his clothes were in disarray. 

 The officers then escorted appellant to a room designed for videotaping. (1) Because
of his belligerent behavior, Locke, in consultation with his supervisor, determined that appellant
should be handcuffed and seated in a chair for his own safety as well as that of the officers. Locke
testified that it is not the usual practice to video a defendant handcuffed or sitting: 


I called my supervisor to the scene to--to the jail. I asked him--I told him of my
concerns and I said, "What should I do?" His suggestion was that I place Mr. Garcia
in handcuffs, take a chair in there and have him sit down in the chair, read him his
rights, do the DWI interview and the DIC-24. And he said you know, "If he'll
perform the test you can try to perform the test." I honestly didn't believe that he
would do that.



 With appellant in handcuffs, Locke advised him of his rights, including his right to
refuse a breath test and the consequences of a refusal. According to Locke's testimony and our
review of the five-minute videotape, appellant refused to give a breath specimen, and he refused to
perform any field sobriety tests. Appellant insisted that the officers leave him alone and he refused
to sign the statutory warning form stating that he was refusing to provide a breath specimen. Locke
testified that, based on his training, experience, and observations, appellant had lost the use of his
mental and physical faculties due to alcohol consumption. 

 During trial, the State offered the videotape into evidence. Appellant's counsel
objected to its admission, stating: "[W]e'd object under Lucas v. State, 791 S.W.2d 35, for the
reasons urged earlier: The prejudicial outweighs the probative value. But also, the State is not
laying the proper predicate per Lucas. I will show the court the proper predicate, but I won't share
it with the State, because it's not my job." (2) The court overruled the objection and admitted the
exhibit.

 Appellant testified on his own behalf, presenting a starkly different account of events. 
He testified that at the time of his arrest, he was a 54-year-old veteran receiving disability payments,
and in poor health, with a shoulder injury for which he had received surgery, a protruding disc in his
back, and diabetes. Because of his poor health, he had quit drinking and had imbibed his last
alcoholic beverage in 1999. He did not notice that he was being followed by the police until he
approached the car dealership. Appellant claimed that he was unable to place both arms on the
tailgate of the pickup and that he explained to Locke that he had difficulty raising his arm because
of his shoulder surgery, but "[the officer] insisted on me doing it." Appellant testified that Locke
continued to "badger" him and grabbed him by the waist, pulling his pants and busting the zipper. 
Appellant complained that he needed to urinate, but Locke told him he could wait until they arrived
at the jail. Appellant denied telling Locke he had a little bit to drink, testifying: "I've been arrested
before and I'm not going to admit to an officer that I've been arrested before. I had some problems
the last time so this time I wasn't going to tell them anything." Appellant also testified that he did
not understand that, when the officer asked him if he had had something to drink, the officer meant
alcoholic beverages. He thought the officer was talking about beverages in general. He testified:


Q. So when Officer Locke asked you "have you had anything to drink tonight," you
thought he was talking about water?


A. Well, that's what my impression was, yes.



Appellant testified that he ended up in San Marcos because he was "confused and lost" and that he
"needed some assistance." He did not tell Locke about his diabetes or other maladies because Locke
"was being mean" and "I didn't think he would believe me."

 Dr. John Black, a flight surgeon and radiologist at the San Antonio Medical Center,
also testified on appellant's behalf. Although Black had not treated appellant, he testified generally
that diabetes can cause significant changes in mood, in judgment and perceptions, and in physical
and mental performance. He agreed that glassy eyes, slurred speech, and unsteadiness could be
symptoms of diabetes as well as of intoxication. After viewing the videotape, Black opined that
appellant could be suffering from a diabetic hyperglycemic or hypoglycemic attack or "it could have
been alcohol." "I don't know. I can't distinguish between the two."

 At trial, appellant was found guilty by the jury of the felony offense of driving while
intoxicated (3) and the trial court imposed sentence.


ANALYSIS


 In four issues, appellant complains that the videotape that showed him in handcuffs
was inadmissible because it (i) deprived him of his rights to be presumed innocent, to have a fair
trial, and to be afforded due process of law; (ii) was unduly prejudicial; and (iii) was introduced into
evidence without the proper predicate. Appellant also complains that the jury charge was improper. 

 As a general matter, the video and audio portions of a videotape of a defendant's
performance on field sobriety tests are admissible. See Jones v. State, 795 S.W.2d 171, 172 (Tex.
Crim. App. 1990). The video portion of the tape is admissible because a defendant's performance
on the tests does not call for "testimonial" responses. Id. at 171-72 (citing Miffleton v. State, 777
S.W.2d 76 (Tex. Crim. App. 1989)). The audio portion is likewise admissible to the extent it
contains "activity normally attendant to arrest and custody of a DWI suspect," rather than
"interrogation" within the scope of Miranda. Id. at 172; see Miranda v. Arizona, 384 U.S. 436
(1966). 

 Appellant acknowledges that visual taping of a DWI suspect's performance on
sobriety tests alone does not implicate the various rights he claims are offended. With the addition
of showing him in handcuffs, however, he claims that his rights were violated and that the tape was
improperly admitted into evidence. Citing Lucas v. State, 791 S.W.2d 35 (Tex. Crim. App. 1989),
and Mouton v. State, 235 S.W.2d 645 (Tex. Crim. App. 1951), he asserts that requiring a defendant
to wear handcuffs in the presence of the jury at trial or in a videotape depiction infringes on his
constitutional presumption of innocence. 

 Although it is clear that it is improper for an accused to be brought into the view of
the jury while handcuffed, an exception exists where it is shown on the record of the proceeding that
there are "exceptional circumstances" or a "manifest need" for such restraint. Long v. State, 823
S.W.2d 259, 282 (Tex. Crim. App. 1991). In Mouton, a case in which the jury was shown pictures
of the defendant in handcuffs at the scene of the crime, the court of criminal appeals recognized that
a trial court may exercise its discretion in those narrow circumstances to restrain the defendant even
in the presence of the jury. 235 S.W.2d at 650. The court stated


Applying such rule and the exceptions thereto, this court has declined to order
reversal even in death penalty cases, on the ground that the accused was brought into
the presence of the jury handcuffed, in the absence of a showing of injury or
prejudice to the accused.



Id. at 651. 

 Of the cases cited by appellant, only Lucas and Mouton deal with out-of-court
depictions of a handcuffed defendant, and neither was made at or near the time of the defendant's
arrest. Lucas and Mouton were both cooperating with the police at the time of the video and their
behavior at the time of the recording was not at issue. See Lucas, 791 S.W.2d at 41-42; Mouton, 235
S.W.2d at 650-51. Likewise, the other cases cited by appellant do not support his position. See, e.g.,
Marquez v. State, 725 S.W.2d 217, 230 (Tex. Crim. App.) (court properly exercised its discretion
in shackling at trial defendant who threatened jailer), cert. denied, 484 U.S. 872 (1987); Clark v.
State, 717 S.W.2d 910, 919 (Tex. Crim. App. 1986) (momentary, inadvertent, and fortuitous display
of handcuffed defendant to several jurors outside courtroom not error); Thompson v. State, 514
S.W.2d 275, 277-78 (Tex. Crim. App. 1974) (court properly exercised discretion in requiring co-defendant witnesses to testify in jail clothing and restraints). In Moore v. State, the court of criminal
appeals reversed a conviction because the record failed to "affirmatively reflect sufficient reasons
for the appellant to be viewed by the jurors in handcuffs" and held, therefore, that the trial court
abused its discretion. 535 S.W.2d 357, 358 (1976). The court concluded that neither the sheriff nor
the trial judge believed that any exceptions to the bar existed "because appellant was in fact allowed
to sit free and unfettered during the trial itself." Id.

 We cannot say the trial court abused its discretion in this case. There was ample
testimony to support the trial court's finding of justification. That the defendant was difficult to
control and exhibited belligerent and violent behavior by body-slamming one of the officers and
otherwise threatening the officers is fully reflected in the record. We overrule appellant's first and
second issue.

 Appellant also contends that the trial court erred in admitting the videotape because
its prejudice outweighed its probative value. See Tex. R. Evid. 403. He contends that the only
reason to make the videotape was to show the appellant's poor physical condition at the time of the
offense and to "exaggerate" it by "forcing him to be seated and restrained in handcuffs."

 Rule 403 provides for the exclusion of relevant evidence when its probative value is
substantially outweighed by the danger of unfair prejudice. Id. The trial court's ruling to admit
evidence over a rule 403 objection is measured by an abuse of discretion standard. Montgomery v.
State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). The ruling is not an abuse of discretion if it
was within the "zone of reasonable disagreement." Id.

 In an intoxication case, the mental and physical faculties of the defendant at the time
of arrest are the crux of the dispute. Appellant does not suggest that Officer Locke's testimony
concerning his behavior is not relevant. The officers involved properly testified to their observations
of appellant while he was in custody, including the fact that they were forced to restrain him. 
Appellant does not challenge the admissibility of this evidence. A videotape depicting evidence that
is otherwise admissible through testimony is admissible unless it is offered "solely to inflame the
minds of the jury." Lucas, 791 S.W.2d at 54. 

 Here, the evidence is deemed admissible by statute. Section 724.061 of the Texas
Transportation Code expressly provides for the admissibility at trial of a person's refusal to submit
to the taking of a blood or breath specimen. Tex. Transp. Code Ann. § 724.061 (West 1999). 
Moreover, the video shows appellant refusing to sign the form to provide a breath specimen. 
Because the video was limited to the information that is otherwise admissible by statute and also
demonstrated appellant's physical condition and behavior close in time to the events at issue, the
evidence was highly probative and not unduly prejudicial. We overrule appellant's third issue.

 Citing Texas Rule of Evidence 901, appellant also complains that the State failed to
lay the proper predicate for admission of the videotape. See Tex. R. Evid. 901. He asserts that the
State failed to establish the proper foundation that the recording at issue was properly authenticated
and identified. At trial, appellant urged that the State failed to lay the proper predicate "per Lucas,"
but he declined to "share [that predicate] with the State, because that's not my job." In order to
preserve error for appellate review, there must be a timely, specific trial objection. See Tex. R. App.
P. 33.1; DeBlanc v. State, 799 S.W.2d 701, 718 (Tex. Crim. App. 1990). We have addressed the
trial objections presented. The complaint on appeal must comport with the trial objection or nothing
is presented for review. See Rezac v. State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990). The "per
Lucas" objection did not preserve error on a Rule 901 claim. Moreover, a mere objection based on
improper predicate is insufficient to inform the trial court how the predicate is deficient. See, e.g.,
Bird v. State, 692 S.W.2d 65, 70 (Tex. Crim. App. 1985), cert. denied, 475 U.S. 1031 (1986);
Fluellen v. State, 104 S.W.3d 152, 166-67 (Tex. App.--Texarkana 2003, no pet.); Jones v. State, 825
S.W.2d 470, 472 (Tex. App.--Corpus Christi 1991, pet. ref'd). We overrule appellant's fifth issue. In appellant's fourth issue, he urges that the trial court erred by submitting a jury
charge that authorized a conviction on an uncharged theory, intoxication by alcohol concentration. 
The court defined the term "intoxicated" to mean


(a) not having the normal use of mental or physical facilities by reason of the
introduction of alcohol, a controlled substance, a drug, or dangerous drug or a
combination of two or more of those substances or any other substance into the
body; or having an alcohol concentration of 0.08 or more. 



(Emphasis added.) Because (i) appellant was charged in the indictment with not having the normal
use of his mental or physical faculties by reason of the introduction of alcohol, (ii) the State did not
introduce evidence of alcohol concentration, and (iii) appellant in fact had refused a breath test, he
contends that the court's charge allowed the jury to convict appellant for conduct not charged in the
indictment. Appellant made no objection to the charge at the time of trial.

 When an appellant has failed to object to an erroneous jury charge, as here, we apply
the Almanza egregious-harm standard, which requires reversal only if the error was so harmful as
to deprive the appellant of a fair and impartial trial. Almanza v. State, 871 S.W.2d 726, 731-32 (Tex.
Crim. App. 1994). To assess the degree of harm, we examine the entire jury charge, the state of the
evidence, the arguments of counsel, and any other relevant information reflected in the record of the
trial as a whole. Id. We examine the relevant portions of the entire record to determine whether
appellant suffered any actual harm as a result of the error. Arline v. State, 721 S.W.2d 348, 352
(Tex. Crim. App. 1986). Errors that result in egregious harm are those that affect "the very basis of
the case," "deprive the defendant of a valuable right," or "vitally affect a defensive theory." Hutch
v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (citing Almanza, 686 S.W.2d at 172). 
Appellant has the burden to prove that he suffered some actual, rather than merely theoretical, harm
from the error. Dickey v. State, 22 S.W.3d 490, 492 (Tex. Crim. App. 1999) (citing Arline, 721
S.W.2d at 351).

 Here, the only disputed issue was whether appellant's mental and physical faculties
were impaired by alcohol or by his physical maladies, including diabetes. The evidence was
uncontested that appellant was impaired and that he had refused to submit to testing, including an
alcohol concentration test, and that no testing was done. 

 Examining the egregious harm factors, we conclude that appellant has not carried his
burden to prove that he suffered actual harm. Appellant has failed to establish that some actual,
rather than theoretical, harm resulted from any error. There is no reason to believe that any juror was
confused as to the issues in the case or the proof adduced at trial. We overrule appellant's fifth issue.

CONCLUSION


 We conclude that the trial court did not err (i) in allowing the videotape into evidence
or (ii) in its charge to the jury. We overrule appellant's issues and affirm the judgment of conviction. 



 __________________________________________

 Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: August 18, 2005

Do Not Publish
1. Locke testified that his vehicle was not equipped with a camera and that, in January 2002,
only two of the forty police department patrol cars were equipped with cameras.
2. In appellant's motion to suppress, he challenged the videotape's admission on the grounds
that it amounted to illegal custodial interrogation, was the fruit of an illegal arrest, and was not made
in compliance with article 38.22, section 3 of the Texas Code of Criminal Procedure. See Tex. Code
Crim. Proc. Ann. art. 38.22, § 3 (West Supp. 2004-05). Finding that "there was good and sufficient
reason for the handcuffs that are displayed in the video," the trial court overruled the motion in a pre-trial hearing.
3. The State offered into evidence appellant's stipulation to prior DWI convictions.