# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00591-CR

**Roberto Valdez Garcia, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
NO. CR-02-092, HONORABLE RONALD GUY CARR, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Roberto Valdez Garcia appeals his conviction for the felony offense of driving while intoxicated. *See* Tex. Pen. Code Ann. § 49.04 (West 2003), § 49.09 (West Supp. 2004-05). A jury found appellant guilty and the trial court assessed punishment at eight years' confinement with the sentence probated to eight years of community supervision. In five issues, appellant challenges (i) the admission of a DWI videotape made after his arrest showing him in handcuffs and (ii) the jury charge. For the reasons that follow, we affirm the judgment of conviction.

On January 5, 2002, shortly before 11 p.m., San Marcos Police Officer Loy Locke was patrolling the interstate highway going north on the access road when a vehicle approached him from behind at a rate of speed faster than he was traveling; it passed him in a no-passing zone. Locke activated his lights and followed the vehicle as it increased its speed. When the vehicle failed to stop, Locke activated his siren. Over the next two miles, the vehicle crossed the center stripe four

times and at one point swerved to the right almost hitting a metal guardrail. The vehicle passed the south entrance of an automobile dealership, entered the north entrance, and then returned to the roadway. The vehicle then came to a stop in the parking lot of one of the stores at the Tanger outlet mall. The car straddled two parking spaces.

As appellant exited the truck, Officer Locke instructed him to return to his vehicle and put his hands on the bed of the truck. At trial, Locke testified that appellant "staggered" over to the truck and that he could smell alcohol on appellant's breath. Locke asked him where he was going. Appellant replied that he was returning home to San Antonio. Appellant then stated that he was coming from San Antonio. Locke asked him whether he had had anything to drink. Locke testified that appellant "first replied that he had none." When Locke told him that he could smell alcohol on his breath, appellant responded, "I drank a little." Locke observed that appellant's pants were unzipped and the front of his pants appeared stained, perhaps with urine.

As the officer began to conduct field sobriety tests, appellant said that he did not want to do them and began to walk away. He repeatedly told the officer that he "just wanted to go home." Observing that appellant's eyes were glassy and bloodshot, that he was unsteady on his feet, and that his speech was slurred, Locke placed appellant under arrest. At trial, Locke testified that, based upon his training, experience, and observations of appellant's behavior at the scene of the stop, he believed that appellant was intoxicated. As Locke began to place a double set of handcuffs on appellant because of his large size, appellant became agitated and began yelling and cursing at the officer. Locke called for a larger car to transport appellant to the jail.

2

Upon arrival at the jail, an officer removed appellant's handcuffs to search him. Although he instructed appellant to place his hands on the wall, appellant kept turning toward the officer. Locke testified that appellant was still agitated, upset, cursing, and complaining, and an altercation ensued as the officers tried to search him and then calm him. When appellant "body slammed" Locke, the officer replaced the handcuffs on him, placed him in a room, and removed the handcuffs. They returned shortly thereafter to find him sitting on the toilet but dressed. Appellant refused to stand up. His pants were still unzipped and his clothes were in disarray.

The officers then escorted appellant to a room designed for videotaping.[1] Because of his belligerent behavior, Locke, in consultation with his supervisor, determined that appellant should be handcuffed and seated in a chair for his own safety as well as that of the officers. Locke testified that it is not the usual practice to video a defendant handcuffed or sitting:

> I called my supervisor to the scene to—to the jail. I asked him—I told him of my concerns and I said, "What should I do?" His suggestion was that I place Mr. Garcia in handcuffs, take a chair in there and have him sit down in the chair, read him his rights, do the DWI interview and the DIC-24. And he said you know, "If he'll perform the test you can try to perform the test." I honestly didn't believe that he would do that.

With appellant in handcuffs, Locke advised him of his rights, including his right to refuse a breath test and the consequences of a refusal. According to Locke's testimony and our review of the five-minute videotape, appellant refused to give a breath specimen, and he refused to perform any field sobriety tests. Appellant insisted that the officers leave him alone and he refused

_____

[1] Locke testified that his vehicle was not equipped with a camera and that, in January 2002, only two of the forty police department patrol cars were equipped with cameras.

to sign the statutory warning form stating that he was refusing to provide a breath specimen. Locke testified that, based on his training, experience, and observations, appellant had lost the use of his mental and physical faculties due to alcohol consumption.

During trial, the State offered the videotape into evidence. Appellant's counsel objected to its admission, stating: "[W]e'd object under *Lucas v. State*, 791 S.W.2d 35, for the reasons urged earlier: The prejudicial outweighs the probative value. But also, the State is not laying the proper predicate per *Lucas*. I will show the court the proper predicate, but I won't share it with the State, because it's not my job."[2] The court overruled the objection and admitted the exhibit.

Appellant testified on his own behalf, presenting a starkly different account of events. He testified that at the time of his arrest, he was a 54-year-old veteran receiving disability payments, and in poor health, with a shoulder injury for which he had received surgery, a protruding disc in his back, and diabetes. Because of his poor health, he had quit drinking and had imbibed his last alcoholic beverage in 1999. He did not notice that he was being followed by the police until he approached the car dealership. Appellant claimed that he was unable to place both arms on the tailgate of the pickup and that he explained to Locke that he had difficulty raising his arm because of his shoulder surgery, but "[the officer] insisted on me doing it." Appellant testified that Locke

---

[2] In appellant's motion to suppress, he challenged the videotape's admission on the grounds that it amounted to illegal custodial interrogation, was the fruit of an illegal arrest, and was not made in compliance with article 38.22, section 3 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 3 (West Supp. 2004-05). Finding that "there was good and sufficient reason for the handcuffs that are displayed in the video," the trial court overruled the motion in a pre-trial hearing.

4

continued to "badger" him and grabbed him by the waist, pulling his pants and busting the zipper. Appellant complained that he needed to urinate, but Locke told him he could wait until they arrived at the jail. Appellant denied telling Locke he had a little bit to drink, testifying: "I've been arrested before and I'm not going to admit to an officer that I've been arrested before. I had some problems the last time so this time I wasn't going to tell them anything." Appellant also testified that he did not understand that, when the officer asked him if he had had something to drink, the officer meant alcoholic beverages. He thought the officer was talking about beverages in general. He testified:

> Q. So when Officer Locke asked you "have you had anything to drink tonight," you thought he was talking about water?
>
> A. Well, that's what my impression was, yes.

Appellant testified that he ended up in San Marcos because he was "confused and lost" and that he "needed some assistance." He did not tell Locke about his diabetes or other maladies because Locke "was being mean" and "I didn't think he would believe me."

Dr. John Black, a flight surgeon and radiologist at the San Antonio Medical Center, also testified on appellant's behalf. Although Black had not treated appellant, he testified generally that diabetes can cause significant changes in mood, in judgment and perceptions, and in physical and mental performance. He agreed that glassy eyes, slurred speech, and unsteadiness could be symptoms of diabetes as well as of intoxication. After viewing the videotape, Black opined that appellant could be suffering from a diabetic hyperglycemic or hypoglycemic attack or "it could have been alcohol." "I don't know. I can't distinguish between the two."

5

At trial, appellant was found guilty by the jury of the felony offense of driving while intoxicated[3] and the trial court imposed sentence.

## ANALYSIS

In four issues, appellant complains that the videotape that showed him in handcuffs was inadmissible because it (i) deprived him of his rights to be presumed innocent, to have a fair trial, and to be afforded due process of law; (ii) was unduly prejudicial; and (iii) was introduced into evidence without the proper predicate. Appellant also complains that the jury charge was improper.

As a general matter, the video and audio portions of a videotape of a defendant's performance on field sobriety tests are admissible. *See Jones v. State*, 795 S.W.2d 171, 172 (Tex. Crim. App. 1990). The video portion of the tape is admissible because a defendant's performance on the tests does not call for "testimonial" responses. *Id.* at 171-72 (citing *Miffleton v. State*, 777 S.W.2d 76 (Tex. Crim. App. 1989)). The audio portion is likewise admissible to the extent it contains "activity normally attendant to arrest and custody of a DWI suspect," rather than "interrogation" within the scope of *Miranda*. *Id.* at 172; *see Miranda v. Arizona*, 384 U.S. 436 (1966).

Appellant acknowledges that visual taping of a DWI suspect's performance on sobriety tests alone does not implicate the various rights he claims are offended. With the addition of showing him in handcuffs, however, he claims that his rights were violated and that the tape was improperly admitted into evidence. Citing *Lucas v. State*, 791 S.W.2d 35 (Tex. Crim. App. 1989),

---

[3] The State offered into evidence appellant's stipulation to prior DWI convictions.

6

and *Mouton v. State*, 235 S.W.2d 645 (Tex. Crim. App. 1951), he asserts that requiring a defendant to wear handcuffs in the presence of the jury at trial or in a videotape depiction infringes on his constitutional presumption of innocence.

Although it is clear that it is improper for an accused to be brought into the view of the jury while handcuffed, an exception exists where it is shown on the record of the proceeding that there are "exceptional circumstances" or a "manifest need" for such restraint. *Long v. State*, 823 S.W.2d 259, 282 (Tex. Crim. App. 1991). In *Mouton*, a case in which the jury was shown pictures of the defendant in handcuffs at the scene of the crime, the court of criminal appeals recognized that a trial court may exercise its discretion in those narrow circumstances to restrain the defendant even in the presence of the jury. 235 S.W.2d at 650. The court stated

> Applying such rule and the exceptions thereto, this court has declined to order reversal even in death penalty cases, on the ground that the accused was brought into the presence of the jury handcuffed, in the absence of a showing of injury or prejudice to the accused.

*Id.* at 651.

Of the cases cited by appellant, only *Lucas* and *Mouton* deal with out-of-court depictions of a handcuffed defendant, and neither was made at or near the time of the defendant's arrest. Lucas and Mouton were both cooperating with the police at the time of the video and their behavior at the time of the recording was not at issue. *See Lucas*, 791 S.W.2d at 41-42; *Mouton*, 235 S.W.2d at 650-51. Likewise, the other cases cited by appellant do not support his position. *See, e.g., Marquez v. State*, 725 S.W.2d 217, 230 (Tex. Crim. App.) (court properly exercised its discretion in shackling at trial defendant who threatened jailer), *cert. denied*, 484 U.S. 872 (1987); *Clark v.*

7

*State*, 717 S.W.2d 910, 919 (Tex. Crim. App. 1986) (momentary, inadvertent, and fortuitous display of handcuffed defendant to several jurors outside courtroom not error); *Thompson v. State*, 514 S.W.2d 275, 277-78 (Tex. Crim. App. 1974) (court properly exercised discretion in requiring co-defendant witnesses to testify in jail clothing and restraints). In *Moore v. State*, the court of criminal appeals reversed a conviction because the record failed to "affirmatively reflect sufficient reasons for the appellant to be viewed by the jurors in handcuffs" and held, therefore, that the trial court abused its discretion. 535 S.W.2d 357, 358 (1976). The court concluded that neither the sheriff nor the trial judge believed that any exceptions to the bar existed "because appellant was in fact allowed to sit free and unfettered during the trial itself." *Id*.

We cannot say the trial court abused its discretion in this case. There was ample testimony to support the trial court's finding of justification. That the defendant was difficult to control and exhibited belligerent and violent behavior by body-slamming one of the officers and otherwise threatening the officers is fully reflected in the record. We overrule appellant's first and second issue.

Appellant also contends that the trial court erred in admitting the videotape because its prejudice outweighed its probative value. *See* Tex. R. Evid. 403. He contends that the only reason to make the videotape was to show the appellant's poor physical condition at the time of the offense and to "exaggerate" it by "forcing him to be seated and restrained in handcuffs."

Rule 403 provides for the exclusion of relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice. *Id*. The trial court's ruling to admit evidence over a rule 403 objection is measured by an abuse of discretion standard. *Montgomery v.*

8

*State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). The ruling is not an abuse of discretion if it was within the "zone of reasonable disagreement." *Id*.

In an intoxication case, the mental and physical faculties of the defendant at the time of arrest are the crux of the dispute. Appellant does not suggest that Officer Locke's testimony concerning his behavior is not relevant. The officers involved properly testified to their observations of appellant while he was in custody, including the fact that they were forced to restrain him. Appellant does not challenge the admissibility of this evidence. A videotape depicting evidence that is otherwise admissible through testimony is admissible unless it is offered "solely to inflame the minds of the jury." *Lucas*, 791 S.W.2d at 54.

Here, the evidence is deemed admissible by statute. Section 724.061 of the Texas Transportation Code expressly provides for the admissibility at trial of a person's refusal to submit to the taking of a blood or breath specimen. Tex. Transp. Code Ann. § 724.061 (West 1999). Moreover, the video shows appellant refusing to sign the form to provide a breath specimen. Because the video was limited to the information that is otherwise admissible by statute and also demonstrated appellant's physical condition and behavior close in time to the events at issue, the evidence was highly probative and not unduly prejudicial. We overrule appellant's third issue.

Citing Texas Rule of Evidence 901, appellant also complains that the State failed to lay the proper predicate for admission of the videotape. *See* Tex. R. Evid. 901. He asserts that the State failed to establish the proper foundation that the recording at issue was properly authenticated and identified. At trial, appellant urged that the State failed to lay the proper predicate "per *Lucas,*" but he declined to "share [that predicate] with the State, because that's not my job." In order to

9

preserve error for appellate review, there must be a timely, specific trial objection. *See* Tex. R. App. P. 33.1; *DeBlanc v. State*, 799 S.W.2d 701, 718 (Tex. Crim. App. 1990). We have addressed the trial objections presented. The complaint on appeal must comport with the trial objection or nothing is presented for review. *See Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990). The "per *Lucas*" objection did not preserve error on a Rule 901 claim. Moreover, a mere objection based on improper predicate is insufficient to inform the trial court how the predicate is deficient. *See*, *e.g.*, *Bird v. State*, 692 S.W.2d 65, 70 (Tex. Crim. App. 1985), *cert. denied*, 475 U.S. 1031 (1986); *Fluellen v. State*, 104 S.W.3d 152, 166-67 (Tex. App.—Texarkana 2003, no pet.); *Jones v. State*, 825 S.W.2d 470, 472 (Tex. App.—Corpus Christi 1991, pet. ref'd). We overrule appellant's fifth issue.

In appellant's fourth issue, he urges that the trial court erred by submitting a jury charge that authorized a conviction on an uncharged theory, intoxication by alcohol concentration. The court defined the term "intoxicated" to mean

> (a) not having the normal use of mental or physical facilities by reason of the introduction of alcohol, a controlled substance, a drug, or dangerous drug or a combination of two or more of those substances or any other substance into the body; or *having an alcohol concentration of 0.08 or more.*

(Emphasis added.) Because (i) appellant was charged in the indictment with not having the normal use of his mental or physical faculties by reason of the introduction of alcohol, (ii) the State did not introduce evidence of alcohol concentration, and (iii) appellant in fact had refused a breath test, he contends that the court's charge allowed the jury to convict appellant for conduct not charged in the indictment. Appellant made no objection to the charge at the time of trial.

When an appellant has failed to object to an erroneous jury charge, as here, we apply the *Almanza* egregious-harm standard, which requires reversal only if the error was so harmful as to deprive the appellant of a fair and impartial trial. *Almanza v. State*, 871 S.W.2d 726, 731-32 (Tex. Crim. App. 1994). To assess the degree of harm, we examine the entire jury charge, the state of the evidence, the arguments of counsel, and any other relevant information reflected in the record of the trial as a whole. *Id*. We examine the relevant portions of the entire record to determine whether appellant suffered any actual harm as a result of the error. *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986). Errors that result in egregious harm are those that affect "the very basis of the case," "deprive the defendant of a valuable right," or "vitally affect a defensive theory." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (citing *Almanza*, 686 S.W.2d at 172). Appellant has the burden to prove that he suffered some actual, rather than merely theoretical, harm from the error. *Dickey v. State*, 22 S.W.3d 490, 492 (Tex. Crim. App. 1999) (citing *Arline*, 721 S.W.2d at 351).

Here, the only disputed issue was whether appellant's mental and physical faculties were impaired by alcohol or by his physical maladies, including diabetes. The evidence was uncontested that appellant was impaired and that he had refused to submit to testing, including an alcohol concentration test, and that no testing was done.

Examining the egregious harm factors, we conclude that appellant has not carried his burden to prove that he suffered actual harm. Appellant has failed to establish that some actual, rather than theoretical, harm resulted from any error. There is no reason to believe that any juror was confused as to the issues in the case or the proof adduced at trial. We overrule appellant's fifth issue.

11

## CONCLUSION

We conclude that the trial court did not err (i) in allowing the videotape into evidence or (ii) in its charge to the jury. We overrule appellant's issues and affirm the judgment of conviction.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   August 18, 2005

Do Not Publish