TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00614-CR






Carl Edward Heiden Jr., Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT

NO. CR2006-386, HONORABLE JACK H. ROBISON, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 A jury convicted Carl Edward Heiden, Jr., of the offense of possession with intent
to deliver a controlled substance, methamphetamine, in an amount more than 4 grams and less
than 200 grams. See Tex. Health & Safety Code Ann. § 481.112(d) (West Supp. 2008). Punishment
was assessed at ten years' imprisonment, probated for ten years, and a $2,000 fine. In a single issue
on appeal, Heiden challenges the district court's denial of his motion to suppress evidence. We will
affirm the judgment.


BACKGROUND

 The underlying facts of this case are not disputed on appeal. On August 8, 2006,
a court order was issued to take Heiden into custody for the purpose of transporting him to a
state hospital for a mental health examination. See Tex. Health & Safety Code Ann. § 573.011
(West 2003), §§ 573.012, .021 (West Supp. 2008), §§ 573.022, 574.045 (West 2003). Attached to
the order was an affidavit by Heiden's mother in which she stated the following:


[Heiden] has sleepless nights and thinks some one is watching him through his
bedroom windows and spraying some kind of poison into his room to kill him.


He has made phone calls to the police and 911 because he wants them to catch
whoever is doing this to him.


. . . .


I'm greatly concerned that he poses a danger to himself or others.


He threatens that he will kill whoever is doing these things to him and in his
delusional state of mind he may at some point think that this could be myself or his
father or an innocent person.


Since he does have access to firearms I feel that this poses a threat to both himself
and others.


I feel it has reached a point where something has to be done before something drastic
occurs.


I want to get help for him before he hurts someone.


This morning he was attempting to make a molatoff [sic] cocktail with a light bulb
which he had drilled a hole in one end.



 That afternoon, at approximately 3:00 p.m., three officers from the Comal County
Sheriff's Office arrived at the residence of Heiden's parents--where Heiden was living at the
time--to execute the order. One of the officers, Deputy Enrique Sanchez, testified at the hearing
on the motion to suppress. According to Sanchez, as the officers approached the residence, Heiden
arrived in his car. Sanchez testified that, as Heiden was getting out of the car, Heiden's father
came out of the house and "engaged in a conversation with his son." The officers then approached
Heiden, verified his identity, and informed Heiden of the order and "our purpose or reason for
being there." Sanchez testified that Heiden "immediately got agitated with his father." At this point,
Sanchez testified, Deputy Jeff Adams proceeded to handcuff him. When asked if, in his mind,
Heiden was under arrest at this point, Sanchez testified, "Yes, he's in custody." However, the
officers did not Mirandize (1) Heiden or tell him that he was under arrest. Instead, Sanchez recalled,
"we told him that we were placing handcuffs on him for safety purposes."

 Next, Sanchez searched Heiden. In response to defense counsel's questioning,
Sanchez described the search as follows:


A: It's a--in the beginning what we do is considered a frisk search for weapons. 
We feel the outer part of the clothing. And then we go a little bit further on
an arrest, which is the search incident to arrest. We go into the person's
pockets and anywhere where contraband can be hidden.


Q: Okay.


A: Or weapons.


Q: Okay. If I understand you correctly, first you do just a Terry[ (2)] or light frisk. 
And if you find something, then you search a little more closely--


A: Correct.



When asked what he found in the initial pat-down search, Sanchez testified, "I felt the--I guess a
lump. I guess what I would call it is just an object in his pocket." Sanchez added that he believed
the item to be "just an object," not a weapon. Sanchez then reached into Heiden's right front
pants pocket and pulled out a prescription bottle. Sanchez "showed the bottle to [Heiden] and
asked him if he was under any medication." According to Sanchez, Heiden volunteered, "No, that's
meth." After Heiden made this statement, Sanchez opened the prescription bottle. Sanchez testified
that what he saw inside the bottle was consistent with what Heiden had told him. Sanchez then
"seized the evidence."

 Heiden was then transported to McKenna State Hospital in San Antonio by the
other officers. At some point either before or after Heiden was transported to the hospital, Sanchez
searched Heiden's vehicle and seized clear, empty Ziploc bags. (3) Later, Sanchez met up with
the other officers at the hospital and waited for Heiden to be evaluated. On August 9, after Heiden
had been examined, another court order was issued to take Heiden into protective custody and
transport him to San Antonio State Hospital. This order was executed by the same officers who
executed the first order. The following day, on August 10, an arrest warrant was issued for Heiden
for the offense of methamphetamine possession. Heiden was ultimately charged with the offense
of methamphetamine possession with intent to deliver.

 Prior to trial, Heiden filed a motion to suppress the evidence obtained when
the officers took him into custody at his parents' residence. Specifically, Heiden sought to
suppress (1) the prescription bottle seized from his pocket, (2) his statement to Sanchez that
the bottle contained "meth," (3) the methamphetamine subsequently discovered in the bottle, and
(4) the plastic bags that were seized from Heiden's vehicle. The district court denied the motion to
suppress, and the case proceeded to trial. (4)
 Heiden was subsequently convicted and sentenced. This
appeal followed.


ANALYSIS

 In his only issue on appeal, Heiden challenges the district court's denial of his motion
to suppress. We review a ruling on a motion to suppress evidence for abuse of discretion. Shepherd
v. State, ___ S.W.3d ___, 2008 Tex. Crim. App. LEXIS 855, at *6 (Tex. Crim. App. Sept. 10, 2008)
(citing State v. Dixon, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). In so doing, we view the
facts in the light most favorable to the trial court's decision. Id. When, as here, the trial court fails
to make explicit findings of fact, we imply fact findings that support the trial court's ruling so long
as the evidence supports the findings. State v. Kelly, 204 S.W.3d 808, 818-19 (Tex. Crim. App.
2006). We give almost total deference to a trial court's express or implied determination of
historical facts and review de novo the court's application of the law of search and seizure to those
facts. Id. (citing State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000)).

 Because the motion to suppress was not relitigated by the parties during trial, our
review of the district court's ruling is limited to the evidence that was before it during the hearing
on the motion to suppress. See, e.g., Rangel v. State, 250 S.W.3d 96, 97-98 (Tex. Crim. App. 2008)
(per curiam) ("We refuse to examine the propriety of a trial judge's ruling based on evidence
that the trial judge had no opportunity to consider when he made his ruling."); Weatherred v. State,
15 S.W.3d 540, 542 (Tex. Crim. App. 2000) (In reviewing trial court's ruling on admissibility of
evidence, "the appellate court must review the trial court's ruling in light of what was before the
trial court at the time the ruling was made."); Rachal v. State, 917 S.W.2d 799, 809 (Tex. Crim. App.
1996) ("[I]n determining whether a trial court's decision is supported by the record, we generally
consider only evidence adduced at the suppression hearing because the ruling was based on it rather
than evidence introduced later.").


The prescription bottle and Ziploc bags

 Two of the items Heiden sought to suppress were the prescription bottle seized from
his pants pocket (admitted during trial as State's Exhibit 3) and the Ziploc bags seized from his
vehicle (admitted during trial as State's Exhibit 4). Regarding the bottle, Heiden asserts that Deputy
Sanchez exceeded the permissible scope of a pat-down frisk by reaching into Heiden's pocket
and pulling out an object that Sanchez did not believe to be a weapon. Regarding the Ziploc bags,
Heiden claims that the warrantless search of his vehicle was not supported by probable cause or
exigent circumstances.

 The State argues that Heiden waived any error in the admission of these items. We
agree. As a general rule, when a pretrial motion to suppress evidence is overruled, the defendant
need not subsequently object at trial to the same evidence in order to preserve error on appeal. See
Livingston v. State, 739 S.W.2d 311, 334 (Tex. Crim. App. 1987); Figueroa v. State, 250 S.W.3d
490, 514 (Tex. App.--Austin 2008, pet. ref'd). However, when the defendant affirmatively asserts
during trial he has "no objection" to the admission of the complained-of evidence, he waives any
error in the admission of the evidence that otherwise would have been preserved by the pre-trial
objection and ruling. See Holmes v. State, 248 S.W.3d 194, 196 (Tex. Crim. App. 2008); Harris
v. State, 656 S.W.2d 481, 484 (Tex. Crim. App. 1983); Boykin v. State, 504 S.W.2d 855, 857
(Tex. Crim. App. 1974); Figueroa, 250 S.W.3d at 514. In this case, when the prescription bottle and
the Ziploc bags were offered into evidence, the following exchange occurred:


The Court: Now, what are you offering now?


[Prosecutor]: State's 3, 4, and 9, State's 3 being the prescription bottle,
State's 4 being some plastic bags recovered from the
defendant's vehicle, and State's Exhibit 9 being the packets
of methamphetamine located inside of State's Exhibit
Number 3.


[Defense Counsel]: Your Honor, I have no objections to State's 3 and 4. 
However, I object to State's 9, the actual methamphetamine
itself, and my objection is lack of foundation.



The district court proceeded to admit all three exhibits. By affirmatively stating "no objection" at
trial to the admission of two of these exhibits--the prescription bottle seized from his pocket and
the plastic bags seized from his vehicle--Heiden waived any complaint on appeal concerning the
admissibility of this evidence that otherwise would have been preserved at the suppression hearing. 
See Holmes, 248 S.W.3d at 201; Moody v. State, 827 S.W.2d 875, 889 (Tex. Crim. App. 1992);
Klapesky v. State, 256 S.W.3d 442, 449 (Tex. App.--Austin 2008, pet. ref'd). (5)


Heiden's statement and the methamphetamine found in the bottle

 However, there was no waiver regarding Heiden's statement to Sanchez that the
prescription bottle contained "meth" and the resulting discovery of the methamphetamine within
the bottle. (6) Therefore, we consider whether the district court abused its discretion in admitting
this evidence.

 First, we address the incriminating statement. According to Heiden, because he "had
been significantly deprived of his freedom of action when he was handcuffed" by the officers,
he should have been advised of his Miranda rights prior to being asked by Sanchez "if he was
under any medication." Because he was not so advised, Heiden asserts, his statement that the bottle
contained "meth" should have been suppressed as the result of improper "custodial interrogation."

 "Custodial interrogation" is defined as "questioning initiated by law enforcement
officers after a person has been taken into custody or otherwise deprived of his freedom of action
in any significant way." Miranda v. Arizona, 384 U.S. 436, 444 (1966). "Unwarned statements
obtained as a result of custodial interrogation may not be used as evidence by the State in a criminal
proceeding during its case-in-chief." Herrera v. State, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007)
(citing Miranda, 384 U.S. at 444). However, "the special procedural safeguards outlined in Miranda
are required not where a suspect is simply taken into custody, but rather where a suspect in custody
is subjected to interrogation." Rhode Island v. Innis, 446 U.S. 291, 300 (1980).

 Even if Heiden was in custody for purposes of Miranda, we conclude that the record
supports an implied finding by the district court that Heiden was not subjected to "interrogation" in
the sense of Miranda. "Interrogation" refers "not only to express questioning, but also to any
words or actions on the part of the police (other than those normally attendant to arrest and custody)
that the police should know are reasonably likely to elicit an incriminating response." Innis,
446 U.S. at 301. "The latter portion of this definition focuses primarily upon the perceptions of the
suspect, rather than the intent of the police." Id. "This is not to say that the intent of the police is
irrelevant, for it may well have a bearing on whether the police should have known that their words
or actions were reasonably likely to evoke an incriminating response." Id. at 301 n.7. "[S]ince the
police surely cannot be held accountable for the unforeseeable results of their words or actions,
the definition of interrogation can extend only to words or actions on the part of police officers that
they should have known were reasonably likely to elicit an incriminating response." Id. at 301-02
(emphasis in original).

 Furthermore, "'interrogation,' as conceptualized in the Miranda opinion, must
reflect a measure of compulsion above and beyond that inherent in custody itself." Id. at 300; see
also Berkemer v. McCarty, 468 U.S. 420, 437 (1984) ("Fidelity to the doctrine announced in
Miranda requires that it be enforced strictly, but only in those types of situations in which the
concerns that powered the decision are implicated."); Jones v. State, 795 S.W.2d 171, 176 n.5
(Tex. Crim. App. 1990) ("[T]he Miranda safeguards do not exist to protect suspects from the
compulsion inherent in custody alone, nor do they protect suspects from their own propensity to
speak, absent some police conduct which knowingly tries to take advantage of the propensity."). 
Thus, not all post-arrest police questioning can be classified as interrogation. Jones, 795 S.W.2d
at 174; Rodriguez v. State, 191 S.W.3d 428, 447 (Tex. App.--Corpus Christi 2006, pet. ref'd). 
Types of questions that are not considered interrogation include "routine inquiries, questions incident
to booking, broad general questions such as 'what happened' upon arrival at the scene of a crime,
and questions mandated by public safety concerns e.g. 'where did you hide the weapon' when
the weapon has just been hidden in the immediate vicinity." Jones, 795 S.W.2d at 174 n.3. "Any
statement given freely and voluntarily without any compelling influences is, of course, admissible
in evidence." Miranda, 384 U.S. at 478. "In distinguishing situations which require safeguards
to protect the privilege against self-incrimination from those that do not, the Miranda court pointed
to isolation and intimidation as key aspects of an interrogation that undermine an individual's ability
to speak voluntarily." Rodriguez, 191 S.W.3d at 447. (7) "In order to determine whether interrogation
occurred, we do not look at the statements made by police in a vacuum; rather we construe
those statements in light of the circumstances of the interaction between the police and the accused
on each particular occasion." Moran v. State, 171 S.W.3d 382, 388 (Tex. App.--Austin 2005),
rev'd, 213 S.W.3d 917 (Tex. Crim. App. 2007) (citing Morris v. State, 897 S.W.2d 528, 532
(Tex. App.--El Paso 1995, no pet.)). (8) Interrogation, as that term has been defined by the courts,
usually involves situations in which an officer asks questions of a suspect relating to a criminal
investigation. See, e.g., Innis, 446 U.S. at 301 n.5 (noting that "incriminating response" refers to
"any response--whether inculpatory or exculpatory--that the prosecution may seek to introduce
at trial"); Ramirez v. State, 105 S.W.3d 730, 741 (Tex. App.--Austin 2003, no pet.) (defendant
suspected of marihuana possession; officer had found contraband in defendant's garage, took
defendant into custody and asked him, "Is there anything else I'm going to find in there that's illegal,
any more marihuana?"; question held to be interrogation); Castleberry v. State, 100 S.W.3d 400, 404
(Tex. App.--San Antonio 2002, no pet.) (during burglary investigation, car in which suspects were
found was inventoried; officer found knife under driver's seat and asked suspects "whose knife it
was"; question held to be interrogation); Sims v. State, 735 S.W.2d 913, 918 (Tex. App.--Dallas
1987, pet. ref'd) (defendant suspected of driving while intoxicated; officer asked suspect "when did
you last eat" and "what did you eat"; questions held to be interrogation because responses could be
incriminating in context of DWI trial). (9)

 In this case, the record supports a finding that Heiden was not subjected to
interrogation when Sanchez asked him "if he was under any medication." First, the record reflects
that the officers were not engaged in a criminal investigation at the time the question was asked. 
Sanchez testified that, prior to Heiden getting out of his car, he had not observed any criminal
activity and did not have any reason to believe that Heiden might have been involved in any kind of
criminal activity. Rather than investigating a crime, the officers were at the residence to execute a
civil protective custody order to transport Heiden to a state hospital for a mental-health evaluation. 
When asked if the "sole reason" he was at the residence was "to take [Heiden] into custody on [the
trial court's] order," Sanchez testified, "True." Furthermore, the record supports a finding by the
district court that this purpose was communicated to Heiden. Sanchez testified that the officers
"informed him of the order and . . . our purpose for being there." Thus, the district court could have
found that Heiden would have perceived that the question Sanchez asked was not related to a
criminal investigation. (10) See Innis, 446 U.S. at 301 (definition of interrogation "focuses primarily
upon the perceptions of the suspect"). Sanchez also testified that when he found the pill bottle in
Heiden's pocket, he was not conducting a narcotics investigation, and he did not know if there
were narcotics in the bottle. Therefore, the district court could have impliedly found that Sanchez
asking Heiden "if he was under any medication" was not a question that Sanchez should have known
was "reasonably likely to elicit an incriminating response," because Sanchez had no reason to
suspect Heiden of narcotics possession. See id. at 301-02 (officers "cannot be held accountable for
the unforeseeable results of their words or actions").

 Additionally, the district court could have impliedly found that, in asking the
question, Sanchez was simply trying to determine whether Heiden's erratic behavior was being
influenced by whatever medication, if any, Heiden might be "under." Sanchez testified that he did
not recall having contact with Heiden before this incident. Therefore, Sanchez testified, he did not
know if Heiden was a dangerous or a peaceful person. However, Sanchez had observed Heiden
become "agitated" with his father when the officers informed Heiden of the order to take him into
custody. When asked to explain what he meant by "agitated," Sanchez explained,


A: He was--he was angry. At any time he could become violent.

Q: Okay. Was he moving his arms around? Was he shouting?

A: He was shouting.

Q: Was he cursing at his father?

A: Yes.

Q: Was he calm and in control of himself?

A: No, he was not.

Additionally, Sanchez knew that he was taking Heiden into custody pursuant to an order requiring
Heiden "to submit to medical examination for mental illness." Thus, the district court could have
impliedly found that Sanchez had reason to believe that Heiden presented a threat to himself
and others, and that Sanchez asked the question about medication in order to determine Heiden's
physical condition. If Heiden was on medication, it would be important that the medication be
documented to ensure that he continue to receive it. Such a question, the district court could have
impliedly found, was part of a routine police procedure normally attendant to taking people into
custody under such circumstances. See Sims, 735 S.W.2d at 917-18 ("[W]e hold that the questions
concerning appellant's physical condition, such as whether appellant was sick, injured, diabetic, or
epileptic, and whether appellant had any physical disabilities or impairments, are questions of
legitimate concern to the police at any time a person is arrested and taken into custody because the
police will be responsible, to some degree, for the arrested person's care and physical well-being. 
Because of this legitimate concern, we hold that such questions are also among those types of
questions normally attendant to arrest and custody, and are not interrogation protected by the
fifth amendment."); see also United States v. Bishop, 66 F.3d 569, 572 n.2 (3rd Cir. 1995)
(concluding that district court did not err in finding that question by officer to suspect who had been
limping about "what was the matter with his leg" was "part of the booking procedure designed
to fulfill the government's obligation to provide medical attention if necessary"); Colon v. State,
256 Ga. App. 505, 568 S.E.2d 811, 813-14 (Ga. Ct. App. 2002) (holding that "police officers have
the responsibility to ask medical questions as part of routine booking in order to fulfill the
government's obligation to provide medical treatment to one in custody"); State v. Geasley, 85 Ohio
App. 3d 360, 619 N.E.2d 1086, 1093 (Ohio Ct. App. 1993) ("The police must be permitted some
leeway into inquiring into the present medical condition of the arrestee. The purpose of such inquiry
is not to elicit incriminating responses, but rather to ensure the safety and well-being of the suspect
while in the custody of the police. Accordingly, asking an arrestee whether he has recently seen a
physician, is taking medication, or has any medical condition requiring special treatment is a
legitimate police concern when booking a suspect."). Because the record supports a finding by the
district court that Heiden was not subject to custodial "interrogation" when Sanchez asked him "if
he was under any medication," we conclude that the district court did not abuse its discretion in
admitting Heiden's answer to the question.

 Finally, we address the seizure of the methamphetamine from inside the prescription
bottle. The Fourth Amendment prohibits the search or seizure of closed containers without a
warrant in the absence of exigent circumstances. United States v. Chadwick, 433 U.S. 1, 15 (1977);
State v. Porter, 940 S.W.2d 391, 393 (Tex. App.--Austin 1997, no pet.). This prohibition has
been applied to prescription bottles. See Howard v. State, 599 S.W.2d 597, 603 (Tex. Crim. App.
1980). However, there are exceptions to the warrant requirement. One such exception is the "plain
view" doctrine. Texas v. Brown, 460 U.S. 730, 736 (1983). An officer may seize items found in
plain view without a warrant if the officer was lawfully on the premises or otherwise properly in a
position to view the object, and if it was immediately apparent to the officer that the item
was evidence of criminal activity. See Horton v. California, 496 U.S. 128, 134-36 (1990); Joseph
v. State, 807 S.W.2d 303, 308 (Tex. Crim. App. 1991); Arrick v. State, 107 S.W.3d 710, 719
(Tex. App.--Austin 2003, pet. ref'd). "Immediately apparent" simply means that there is probable
cause to associate the item with criminal activity. See Brown, 460 U.S. at 741-42; Walter v. State,
28 S.W.3d 538, 541 (Tex. Crim. App. 2000); Arrick, 107 S.W.3d at 719. "[P]robable cause is a
flexible, common-sense standard." Brown, 460 U.S. at 742. "It merely requires that the facts
available to the officer would 'warrant a man of reasonable caution in the belief,' that certain items
may be contraband or stolen property or useful as evidence of a crime." Id. (citing Carroll v. United
States, 267 U.S. 132, 162 (1925)).

 Here, the record supports a finding by the district court that the State satisfied
the plain view doctrine. As we have already explained, Heiden waived any error regarding
the seizure of the prescription bottle from Heiden's pocket. Thus, the only question is whether,
once Sanchez possessed the bottle, he had probable cause to open it without a warrant. Sanchez
testified that Heiden told him the bottle contained "meth." Such an admission would "warrant a man
of reasonable caution in the belief" that the bottle contained contraband. Sanchez also testified that
he did not open the bottle until after Heiden made this statement. The State elicited the following
testimony about what Sanchez did after being informed that the bottle contained methamphetamine:


Q: Now at that point did you look in the bottle to see what was there?


A: Yes, I did.


Q: Did you recognize what you saw based on your training and experience?


A: Yes.


Q: Is that consistent with what Mr. Heiden had told you?


A: Yes, it was.


Q: Is it legal to possess methamphetamine?


A: It's not legal. 


Thus, the record supports a finding by the district court that, before Sanchez searched the inside of
the prescription bottle and seized its contents, he had probable cause to believe the bottle contained
contraband. See Brown, 460 at 739-40, 742-43 (warrantless seizure of green balloon found in
suspect's vehicle authorized because there was probable cause for officer to believe balloon
contained narcotics); Jones v. State, 565 S.W.2d 934, 936 (Tex. Crim. App. 1978) (holding that
warrantless seizure of pistol found in suspect's apartment was authorized because "contraband in
plain view . . . may be lawfully seized by an officer who is lawfully on the premises"); Williford
v. State, 127 S.W.3d 309, 313 (Tex. App.--Eastland 2004, pet. ref'd) (warrantless seizure of
computer authorized because there was probable cause for officer to believe computer contained
child pornography); Arrick, 107 S.W.3d at 719 (warrantless seizure of appellant's shoes authorized
because there was probable cause for officers to believe murder victim's blood might be found on
shoes); see also Michigan v. Long, 463 U.S. 1032, 1050 (1983) (holding that if officer, when
conducting legal search for weapons, "discover[s] contraband other than weapons, he clearly cannot
be required to ignore the contraband, and the Fourth Amendment does not require its suppression
in such circumstances"); Morrison v. State, No. 03-06-00090-CR, 2008 Tex. App. LEXIS 7512,
at *9 (Tex. App.--Austin Oct. 2, 2008, no pet.) (not designated for publication) (holding that, after
appellant admitted to officer that item in his pocket was marihuana, officer was "justified in
retrieving the contraband"). Thus, the district court did not abuse its discretion in admitting the
methamphetamine found in the bottle. 

 We overrule Heiden's sole issue on appeal.


CONCLUSION

 We affirm the judgment of the district court.



 __________________________________________

 Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed: March 25, 2009

Do Not Publish

1. See Miranda v. Arizona, 384 U.S. 436 (1966).
2. See Terry v. Ohio, 392 U.S. 1 (1968).
3. The record contains contradictory evidence about the timing of and basis for Sanchez's
search of Heiden's vehicle. At the suppression hearing, Sanchez testified that he searched Heiden's
vehicle before Heiden was transported to the hospital as part of what Sanchez characterized as
a "search incident to arrest." Additionally, in the offense report that was admitted into evidence
during the suppression hearing, Sanchez stated that he "searched said vehicle incident to arrest." 
However, during trial, Sanchez testified that, after the other officers transported Heiden to the
hospital, he "stayed" at the residence and searched the vehicle. Sanchez later testified at trial that,
"during [Heiden's] transportation, I was able to look in his car." When asked if he was able to see
anything in "plain view" in the vehicle, Sanchez testified, "That was the plastic bags." There was
no testimony elicited during the suppression hearing about the bags being in plain view.
4. The district court submitted an article 38.23 instruction. See Tex. Code Crim. Proc. Ann.
art. 38.23(a) (West 2005).


5. The State also asserts that Heiden waived any error in the admission of the bottle and bags
by testifying about this evidence at trial. We need not address this additional ground for waiver. 
6. The State claims that Heiden waived error regarding the admission of the
methamphetamine itself (State's Exhibit 9) because (1) the methamphetamine was inside the bottle
at the time it was seized, (2) Heiden's objection to the methamphetamine was limited to "lack of
foundation," and (3) Heiden affirmatively stated "no objection" to the admission of the lab report
(State's Exhibit 7) confirming that the substance was methamphetamine. We disagree that Heiden
waived his complaint as to this evidence. First, while the methamphetamine may have been
inside the bottle at the time it was discovered, it was admitted into evidence separately from the
empty prescription bottle. Heiden, although raising the additional objection at trial to "lack of
foundation," did not affirmatively state "no objection" to the methamphetamine itself so as to waive
his objection from the suppression hearing. Finally, although Heiden affirmatively stated "no
objection" to the lab report verifying that the substance was methamphetamine, the lab report was
admitted into evidence separately from the methamphetamine itself, and did not indicate that the
substance determined to be methamphetamine was the same substance Deputy Sanchez found in the
prescription bottle.
7. For example, the cases in Miranda involved "incommunicado interrogation of individuals
in a police-dominated atmosphere" in which the defendants were "thrust into an unfamiliar
atmosphere and run through menacing police interrogation procedures." 384 U.S. at 445, 457. 
8. See also Martinez v. State, No. 04-06-00812-CR, 2008 Tex. App. LEXIS 5430, at *12
(Tex. App.--San Antonio July 23, 2008, pet. dism'd) (designated for publication); Bisor v. State,
2007 Tex. App. LEXIS 2223, at *9-10 (Tex. App.--Dallas Mar. 22, 2007, no pet.) (not designated
for publication).
9. See also Camacho v. State, No. 08-05-00089-CR, 2006 Tex. App. LEXIS 5338, at *12
(Tex. App.--El Paso June 22, 2006, no pet.) (not designated for publication) (defendant suspected
of narcotics possession; narcotics discovered in vehicle; officer asked suspect "if he had any other
narcotics on his person"; question held to be interrogation).
10. Although Heiden had been placed in handcuffs, the officers had advised Heiden that they
had done so "for safety purposes." Also, Sanchez testified that the officers did not tell Heiden he
was under arrest.