

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-180-CR

SHAWN MCDERMOTT                                                          APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

------------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

------------

### MEMORANDUM OPINION[1]

------------

A jury convicted Appellant Shawn McDermott of felony driving while intoxicated (DWI), and the trial court sentenced him to twenty years' confinement in the Institutional Division of the Texas Department of Criminal Justice and a $10,000 fine. In his sole issue, Appellant challenges the legal and factual sufficiency of the evidence to support his conviction. Because we

------

[1] *See* Tex. R. App. P. 47.4.

hold that the evidence is both legally and factually sufficient, we affirm the trial court's judgment.

**Facts**

As Rodney Yard was driving to work on November 30, 2006, at around 3:30 a.m., he saw a red Dodge truck approaching from the opposite direction. Yard testified that the truck swerved out of its lane and into his lane twice. Then, after hitting a guard rail on the other side of the road, the truck swerved into Yard's lane a third time and crashed into Yard's car, even though, Yard testified, he had attempted to move out of the way. Both vehicles stopped, and a passer-by also stopped to ask Yard if he was all right. Yard testified that the truck had stopped approximately fifty to a hundred feet away from his car, and that when he attempted to approach the truck, the driver accelerated and drove off. Yard was not able to see the driver well but was able to see that the driver's hair was "short . . . and . . . blondish." Yard also testified that there were no street lights in the vicinity of the accident and that it was still dark at the time of the accident.

Yard called 911, followed the red truck, and watched it moving as though, in Yard's opinion, the driver of the truck was intoxicated. Yard continued to follow the truck until the dispatcher told him that officers were behind the truck and asked Yard to wait at a nearby gas station. The officers

2

later came to the gas station to take pictures of Yard's car and to question Yard about what had happened.

When the four officers stopped the truck, Appellant was driving it. They questioned him about the accident, and he admitted that he had been driving and had hit a pole. The officers saw that Appellant swayed a little, and they smelled a moderate odor of alcohol. An officer also said that Appellant's speech was slow and slurred at times and that he did not seem cold in the chilly weather, despite the fact that he did not have a jacket. The officer admitted, however, that the dashboard camera video showed Appellant acting as though he was cold and that Appellant sat in the squad car to stay warm while waiting. The officer also admitted that many of the characteristics Appellant exhibited were similar or the exact characteristics of people who were overly tired or exhausted. The officer admitted that the only characteristic Appellant exhibited that was different from someone suffering from exhaustion was the moderate smell of alcohol, and he also admitted that the smell of alcohol can linger for several hours after it has been consumed.

Appellant gave the officer permission to search his truck, and no alcohol was found inside the vehicle. The officers concluded that Appellant was intoxicated from alcohol. No field sobriety tests were offered to Appellant at the scene. The officers testified that the reasons for delaying the field sobriety

3

tests were the weather and conditions at the scene and the fact that the officers who had stopped Appellant were outside their city limits.

Appellant was arrested and taken to the police station, where he refused to give a breath sample.  Field sobriety tests were finally administered at the station.

## Legal Sufficiency

In his first point, Appellant argues that the evidence is legally insufficient to prove that he had lost the normal use of his mental or physical faculties due to the introduction of alcohol.

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2]

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[3]  The trier of fact is

---

[2] *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[3] *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.

the sole judge of the weight and credibility of the evidence.[4]  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder.[5]  Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict."[6]  We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution.[7]

The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case.[8] Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was

---

[4] *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008).

[5] *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000).

[6] *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007).

[7] *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

[8] *Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. June 25, 2008); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

5

tried.[9] However, we may not affirm a conviction based on legal or factual grounds that were not submitted to the jury.[10] The law as authorized by the indictment means the statutory elements of the charged offense as modified by the charging instrument.[11]

Rodney Yard, the man whose car was hit by the red truck at approximately 3:30 a.m., testified to Appellant's erratic driving, his swerving out of his lane and into Yard's lane, his hitting a guard rail, his hitting Yard's car, and his fleeing the scene.[12] Yard immediately followed the truck, and there is no suggestion that anyone other than Appellant was driving. Flight is a circumstance from which a jury may draw an inference of guilt.[13]

The officers testified that Appellant swayed a little and that they smelled a moderate odor of alcohol about his person. There was also evidence that Appellant's eyes were bloodshot and glassy. Evidence of intoxication may include unsteady balance, bloodshot eyes, and the odor of alcohol on a

---

[9] *Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); *Malik,* 953 S.W.2d at 240.

[10] *Malik*, 953 S.W.2d at 238 n.3.

[11] *See Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

[12] *See Martinez v. State*, 66 S.W.3d 467, 469 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd).

[13] *Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. 1979).

suspect.[14]  Officer Roy testified that Appellant's speech was slow and slurred, making him incoherent at times and difficult for the officers to understand. They had to ask Appellant to repeat what he said.  The quality of a suspect's speech can be evidence of intoxication.[15]

The field sobriety tests were administered approximately two hours after the truck struck Yard's car.  Officer Pennington performed a horizontal gaze nystagmus test at the station and claimed to have observed "a total of six clues."  Although the officer did not properly demonstrate the walk-and-turn test for Appellant, in that he turned the wrong direction and bumped into the intoxilyzer machine, Appellant did perform the turn correctly.  But Appellant also stepped off the line twice and swayed during the officer's demonstration. Appellant did well on the one-leg stand until the end, when he stepped back for balance and then went back into position and started to count again.  Appellant refused to take a breath test.  The Texas Court of Criminal Appeals has held that the jury may consider the refusal to take a breath test.[16]

Applying the appropriate standard of review, we hold that the evidence

---

[14] *See Cotton v. State*, 686 S.W.2d 140, 149 n.3 (Tex. Crim. App. 1985).

[15] *See Jones v. State*, 795 S.W.2d 171, 175 (Tex. Crim. App. 1990).

[16] *Gladdis v. State*, 753 S.W.2d 396, 399 (Tex. Crim. App. 1988).

is legally sufficient to support Appellant's conviction.

## Factual Sufficiency

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.[17] We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust.[18] To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict.[19]

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to

---

[17] *Neal v. State,* 256 S.W.3d 264, 275 (Tex. Crim. App. 2008); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006).

[18] *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417.

[19] *Watson*, 204 S.W.3d at 417.

overturn [the] conviction."[20] We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence.[21] We may not simply substitute our judgment for the factfinder's.[22] Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered."[23] Thus, unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence."[24] Our deference in this regard safeguards the defendant's right to a trial by jury.[25]

Appellant argues that the evidence is factually insufficient to support his

---

[20] *Id.*

[21] *Id.*

[22] *Johnson v. State*, 23 S.W.3d 1, 12 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

[23] *Johnson*, 23 S.W.3d at 8.

[24] *Id.* at 9.

[25] *Lancon,* 253 S.W.3d at 704.

9

conviction because the odor of alcohol was merely moderate. A moderate amount of alcohol does not necessarily mean intoxication. The officers testified that Appellant did not seem cold, despite the weather conditions, but the record contains evidence that he was cold, although perhaps not as cold as the officers thought he should have been. Appellant talked slowly and thoughtfully when answering the officer's questions. Being thoughtful is not necessarily evidence of intoxication. The delay in giving Appellant a field sobriety test did not indicate whether Appellant was intoxicated at the time he operated the truck. The tests were administered at 5:30 a.m., an hour at which, Appellant argues, his exhaustion would be overwhelming, affecting his body's reactions, balance, and speech as well as comprehension of the instructions given to him. The officers admitted that, with the exception of the moderate odor of alcohol, all of the symptoms Appellant exhibited were also consistent with exhaustion.

Nevertheless, we note that when Yard observed Appellant's driving, the driving was erratic, dangerous, and consistent with intoxication. When the officers pulled him over, there was a moderate odor of alcohol about Appellant's person, his eyes were bloodshot and glassy, and he was slightly unsteady on his feet. Applying the appropriate standard of review, we hold that the evidence is factually sufficient to support Appellant's guilt. We overrule his sole issue.

10

**Conclusion**

Having overruled Appellant's sole issue on appeal, we affirm the trial court's judgment.

PER CURIAM

PANEL: DAUPHINOT, J.; CAYCE, C.J.; and LIVINGSTON, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: April 2, 2009